**UNITED STATES of America, Plaintiff,**

v.

**SHARON STEEL CORPORATION, UV Industries, Inc., and UV Industries, Inc. Liquidating Trust, Defendants.**

**SHARON STEEL CORPORATION, a Pennsylvania corporation, Third–Party Plaintiff,**

v.

**The STATE OF UTAH, Newpark Resources, Inc., a corporation, Park City Consolidated Mines, a corporation, Chief Consolidated Mining Company, a corporation, and John Does 1 through 100, individuals, companies and corporations, Third–Party Defendants.**

**Civ. No. C–86–0924J.**

United States District Court,
D. Utah, C.D.

Aug. 18, 1987.

David P. Hackett, U.S. Dept. of Justice, Environmental Enforcement Section, Washington, D.C., C. William Ryan, Asst. U.S. Atty., Salt Lake City, Utah, for the U.S.

F. Alan Fletcher, Pruitt, Gushee & Fletcher, Salt Lake City, Utah, Steven M. Pesner, Peter B. Friedman, Anderson, Russell, Kill and Olick, New York City, for Sharon Steel Corp.

Norton F. Tennille, Jr., M. Howard Morse, Arnold & Porter, Washington, D.C., Brent V. Manning, Holme, Roberts & Owen, Salt Lake City, Utah, for UV Industries, Inc. Liquidating Trust.

Fred G. Nelson, Asst. Attys. Gen., Salt Lake City, Utah, for State of Utah.

John W. Horsley, Moyle & Draper, Salt Lake City, Utah, for Park City Consol. Mines Co.

Samuel O. Gaufin, Berman & O'Rorke, Salt Lake City, Utah, for Newpark Resources, Inc.

## MEMORANDUM OPINION AND ORDER

JENKINS, Chief Judge.

On April 10, 1987, the court heard arguments on defendant UV Industries, Inc. Liquidating Trust's motion to dismiss as to UV Industries, Inc. David P. Hackett and C. William Ryan represented the plaintiff, the United States; Norton F. Tennille, M. Howard Morse and Brent V. Manning represented UV Industries, Inc. Liquidating Trust; F. Alan Fletcher and Steven M. Pesner represented defendant Sharon Steel Corporation; Fred G. Nelson represented third-party defendant the state of Utah; John W. Horsley represented third-party defendant Park City Consolidated Mines Company; and Samuel O. Gaufin represented third-party defendant Newpark Resources, Inc. The court took the motion to dismiss under advisement at that time. Now, after considering the arguments of counsel and the pertinent authorities, the court enters this memorandum opinion and order denying the motion.

I.

This case presents the interesting question of whether there is corporate life after death. The court concludes that, at least in this case, there is.

The United States brought this action against Sharon Steel Corporation, UV Industries, Inc. (UV or the corporation) and UV Industries, Inc. Liquidating Trust (the trust) to require the defendants to remedy the public health hazard created by a hazardous waste disposal site in Midvale, Utah, and to recover the costs incurred in responding to the hazard. UV's predecessor, United States Smelting, Refining and Mining Company (USSRM), bought the land in 1906 and used it to store tailings from its milling and smelting operations until about 1971. In 1972 USSRM changed its name to UV Industries, Inc. In 1979 UV decided to liquidate its assets. Sharon Steel Corporation bought most of the assets, including the Midvale site.[1] On March 25, 1980, UV, a Maine corporation, filed articles of dissolution with the Maine Secretary of State.

In December 1980 Congress passed the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (CERCLA), Pub.L. No. 96–510, 94 Stat. 2767 (codified at 42 U.S.C. §§ 9601–57 (1982)), to provide for the cleanup of hazardous substances released into the environment. The United States filed this action under CERCLA on October 10, 1986.[2]

---

1. The week after oral argument on this motion, Sharon Steel filed a voluntary petition for relief under chapter 11 of the bankruptcy code, 11 U.S.C.A. §§ 1101–1174 (1979 & Supp.1987), in the United States Bankruptcy Court for the Western District of Pennsylvania.

2. In October 1986 Congress amended CERCLA. *See* Superfund Amendments and Reauthoriza-

As part of its dissolution, UV created the UV Industries, Inc. Liquidating Trust to wind up its affairs. The trust is administered by six trustees, all former directors of UV. It is empowered to wind up UV's business by paying off UV's liabilities and distributing the remaining assets to the corporation's shareholders. The trust has not yet distributed all of UV's assets.

The trust accepted service of process for itself but refused to accept service for the corporation. The trust has filed a motion to dismiss the corporation on the grounds that it lacks the legal capacity to be sued and has not been properly served.[3]

## II.

Rule 17(b) of the Federal Rules of Civil Procedure states: "The capacity of a corporation to sue or be sued shall be determined by the law under which it was organized." The trust argues, on behalf of the corporation, that, as a dissolved Maine corporation, UV lacks the capacity to be sued under Maine law and hence under rule 17(b).

The Maine Business Corporation Act states: "Upon the filing date of the articles of dissolution, the existence of the corporation shall cease, except for the purpose of suits, other proceedings and appropriate corporate action by and against shareholders, directors and officers as provided in this Act." 6A Me.Rev.Stat.Ann. tit. 13-A, § 1110(2).

The Maine act provides for suits against a dissolved corporation under limited circumstances:

> 1. The dissolution of a corporation ... by the filing by the Secretary of State of the articles of dissolution ... shall not take away or impair any remedy available to or against such corporation, its directors, officers or shareholders for any right or claim existing, or any liability incurred, prior to such dissolution, if action or other proceeding thereon is commenced within 2 years after the date of such dissolution. Any such action or proceeding by or against the corporation may be prosecuted or defended by the corporation in its corporate name....
>
> 2. After dissolution of a corporation, the directors as of the date of dissolution ... shall be deemed liquidating trustees of the corporation with authority to take all action necessary or appropriate to dispose of any undistributed property of the corporation.

*Id.* § 1122.

The trust argues that sections 1110(2) and 1122(1), taken together, mean that, under Maine law, the corporation lost the capacity to be sued in 1982, two years after it was dissolved. Because this suit was not filed until 1986, the trust claims, under rule 17(b) the government cannot maintain this action against the corporation.[4]

The government argues that Utah law—not Maine law—is the applicable law for determining UV's capacity to be sued in this case and that, under Utah Code Annotated § 16-10-101 (1987), UV is still subject to suit because its corporate affairs have not yet been wound up and its assets completely distributed.[5]

---

tion Act of 1986, Pub.L. No. 99-499, 100 Stat. 1613. With a few exceptions, the effective date of the amendments is October 17, 1986, a week after this action was filed. *See id.* § 4, 100 Stat. at 1614. Unless otherwise indicated, the amendments did not change those portions of CERCLA quoted in this opinion.

**3.** In its answer, the trust alleges that the same Maine statutes that it relies on in its motion to dismiss the complaint as to the corporation also preclude this action against the trust. However, the trust has yet to file a motion to dismiss on its own behalf.

**4.** The trust also argues that the plaintiff has not made and cannot make service of process on

the corporation. *See infra* part III. However, if UV has the capacity to be sued, section 1122(2) of the Maine Business Corporation Act would appear to allow service of process on the liquidating trustees as representatives of the corporation in an action such as this affecting undistributed property of the corporation.

**5.** Section 16-10-101 of the Utah Code provides in pertinent part:

> Notwithstanding the dissolution of a corporation ..., the corporate existence of such corporation shall nevertheless continue for the purpose of winding up its affairs in respect to any property and assets which have not been distributed or otherwise disposed of prior to

The government also argues that UV can be sued in this case even under Maine law. It argues that Maine courts would not apply the Maine survival statutes to bar the government's claims in this case because of the overriding public policy expressed in CERCLA.

Defendant Sharon Steel, relying on *United States v. Summerlin*, 310 U.S. 414, 60 S.Ct. 1019, 84 L.Ed. 1283 (1940), argues that the Maine statutes the trust relies on are ineffective in this action because state survival statutes cannot operate to bar the claims of the United States.[6]

The court does not reach these arguments, however, because it concludes that CERCLA overrides rule 17(b) and the applicable state law, whatever that law might be.

■ Congress has plenary power to supersede any of the Federal Rules of Civil Procedure by statute. *United States v. Gustin–Bacon Div., Certain–Teed Prods. Corp.*, 426 F.2d 539, 542 (10th Cir.), *cert. denied*, 400 U.S. 832, 91 S.Ct. 63, 27 L.Ed. 2d 63 (1970). Statutes "ought to be construed to harmonize with the Rules, if feasible," but if Congress's intent to supersede a rule "clearly appears," the rule must give way to the statute. *Id.* The court concludes that this is such a case.

CERCLA authorizes the United States to initiate actions for the removal of hazardous wastes from the environment. 42 U.S.C. § 9604. Congress was especially concerned about abandoned sites—"those where no owner can be found or when the owner cannot afford the cost of clean up." H.R.Rep. No. 1016, 96th Cong., 2d Sess.,

pt. 1, at 20 (1980), *reprinted in* 1980 U.S. Code Cong. & Admin.News 6119, 6123. To pay for the cleanup of hazardous waste sites, CERCLA created the so-called Superfund. *See* 42 U.S.C. § 9631 (repealed 1986); 26 U.S.C.A. § 9507 (Supp.1987). "Wherever possible, however, CERCLA places the ultimate financial burden of toxic waste cleanup on those responsible for creating the harmful conditions." *Artesian Water Co. v. Government of New Castle County*, 659 F.Supp. 1269, 1276 (D.Del.1987). If the parties responsible for the hazardous wastes can be identified, they can be held liable for the cleanup costs, up to specified limits and subject only to certain defenses.

■ CERCLA is meant to be both remedial and retroactive. *United States v. Northeastern Pharmaceutical & Chem. Co.*, 810 F.2d 726, 733 (8th Cir.1986), *petition for cert. filed*, 56 U.S.L.W. 3017 (U.S. July 7, 1987) (No. 87–63). It must be construed broadly and liberally to effect its purposes, namely, to allow the federal government to respond effectively to "problems of national magnitude resulting from hazardous waste disposal" and to assure that those who profit from hazardous activities "bear the costs and responsibility for remedying the harmful conditions they created." *United States v. Reilly Tar & Chem. Corp.*, 546 F.Supp. 1100, 1112 (D.Minn.1982). "The statute should not be narrowly interpreted to ... limit the liability of those responsible for cleanup costs beyond the limits expressly provided." *Id.*

■ Section 107 of CERCLA, 42 U.S.C. § 9607, defines who are "covered persons" subject to liability under the statute. That

---

such dissolution, and to effect such purpose such corporation may ... sue and be sued....

**6.** Sharon Steel also relies on a case from the Western District of Washington that stated that a dissolved corporation was "not immune from suit under the statute of limitations contained in" Washington's business corporation act "because that state law cannot bind the United States Environmental Protection Agency under CERCLA." *Pacific Resins & Chems., Inc. v. United States*, 654 F.Supp. 249, 255 (W.D.Wash. 1986). The trust argues that the court confused a state survival statute, which goes to capacity

to be sued, with a statute of limitations, which goes to the timeliness of a suit. Be that as it may, the case is of dubious authority for Sharon Steel's position because the statement relied on was dicta. The court dismissed the corporation's declaratory judgment action on the grounds that the government's action in sending the corporation a notice letter was not yet reviewable. It therefore did not have to reach the question of the corporation's capacity to be sued under CERCLA. It is not even clear from the opinion whether the passage quoted above stated the court's opinion or simply paraphrased one of the government's arguments.

section states in pertinent part: *"Notwith-standing any other provision or rule of law,* and subject only to the defenses set forth in subsection (b) of this section[,] . . . any person who at the time of disposal of any hazardous substance owned or operated any facility at which . . . hazardous substances were disposed of" shall be liable for cleanup costs. 42 U.S.C. § 9607(a) (emphasis added). Section 101 of CERCLA defines "person" to include a "corporation,"[7] without regard to its current status.[8] 42 U.S.C. § 9601(21). Thus, the express language of the statute "imposes liability on those parties responsible for the release . . . of hazardous substances '[n]otwithstanding any other provision or rule of law.' " *Dedham Water Co. v. Cumberland Farms Dairy, Inc.,* 805 F.2d 1074, 1078 (1st Cir.1986).

■ This court joins those courts that have refused to "interpret section 9607(a) in any way that apparently frustrates the statute's goals, in the absence of a specific congressional intent otherwise." *Id.* at 1081 (quoting *New York v. Shore Realty Corp.,* 759 F.2d 1032, 1045 (2d Cir.1985)). Rather, given CERCLA's broad remedial purpose and Congress's expressed intent that those responsible for hazardous waste sites bear the cost of cleaning them up, the court concludes that CERCLA's language —"any person" who owned or operated a hazardous waste disposal site "shall be liable for" cleanup costs "[n]otwithstanding any other provision or rule of law"—clearly expresses Congress's intent to supersede any rule that would otherwise relieve a responsible party from liability. Thus, rule 17(b) presents no bar to the government's claim against UV. *Cf. Almond v. Kent,*

459 F.2d 200, 203 (4th Cir.1972) (42 U.S.C. § 1983, which affords the right to sue to "any citizen of the United States," authorizes a prisoner to maintain a civil rights action regardless of whether he had the capacity to sue under state law, made applicable by rule 17(b)). The court's conclusion furthers Congress's purpose "by ensuring that liability will be apportioned among parties responsible for the release of hazardous substances whenever possible." *Dedham Water Co.,* 805 F.2d at 1081.

The cases that the trust relies on do not change this court's conclusion.

In support of its position, the trust first cites *United States v. Northeastern Pharmaceutical & Chem. Co.,* 579 F.Supp. 823 (W.D.Mo.1984), *aff'd in part, rev'd in part,* 810 F.2d 726 (8th Cir.1986), *petition for cert. filed,* 56 U.S.L.W. 3017 (U.S. July 7, 1987) (No. 87–63). That case involved a corporation (NEPACCO) that had forfeited its charter but had not been dissolved. The court distinguished a corporation that had lost its charter from a dissolved corporation. It held that the former could be sued but suggested that the latter might not be subject to suit under the applicable state law. 579 F.Supp. at 827–28 n. 1. The court of appeals found the distinction valid and affirmed the district court's conclusion on NEPACCO's capacity to be sued. 810 F.2d at 746–47. Because the corporation was subject to suit under the applicable state law, the court did not have to determine whether CERCLA might override state law in such a case. *Northeastern Pharmaceutical* is therefore inapplicable to this action.[9]

In the second case the trust relies on, *Levin Metals Corp. v. Parr–Richmond*

7. CERCLA's definition of "person" also includes a "firm" and a "commercial entity." The government argues that these terms might apply to a dissolved corporation such as UV so that even if UV is not a "corporation" within the meaning of the statute it might still qualify as a "person" subject to suit under CERCLA. The court concludes, however, that a dissolved corporation, such as UV, whose assets have not yet been fully distributed to shareholders is a "corporation" and hence "person" within the meaning of CERCLA.

8. If Congress had intended CERCLA to reach only existing corporations, it certainly knew

how to draft the statute to express that intent. *Cf.* 15 U.S.C. § 7 (a "person" for purposes of the Sherman Act includes "corporations and associations existing under or authorized by the laws of . . . any State").

9. To the extent the trust claims that UV should be dismissed because it has no assets, *see infra* text accompanying note 13, *Northeastern Pharmaceutical* actually undermines the trust's argument, since in that case the corporation was held liable even though its assets had all been liquidated and the proceeds distributed to shareholders years before the government brought its action. *See* 579 F.Supp. at 827. At least some

*Terminal Co.*, 631 F.Supp. 303 (N.D.Cal. 1986), *aff'd*, 817 F.2d 1448 (9th Cir.1987), the owner of a hazardous waste site (Levin Metals) sued the former owners to recover cleanup costs and to establish their liability for future costs. One of the defendants, Parr Industrial Corporation (PIC), a dissolved California corporation, moved to dismiss on the ground that it lacked the capacity to be sued. Under California law a dissolved corporation could only be sued on a cause of action "arising prior to its dissolution." PIC argued that the plaintiff's CERCLA claim was a post-dissolution claim because it could not have arisen before 1980, when CERCLA was enacted, and PIC was dissolved in 1971. The trial court agreed and dismissed the action against PIC.[10] *But see Abington Heights School Dist. v. Speedspace Corp.*, 693 F.2d 284 (3d Cir.1982) (holding that, under California law, a dissolved corporation "is subject to suit arising out of its pre-dissolution activities").

The court of appeals affirmed. *Levin Metals Corp. v. Parr–Richmond Terminal Co.*, 817 F.2d 1448 (9th Cir.1987). Although the trial court had not considered the effect of CERCLA on state law, incorporated by rule 17(b), the Ninth Circuit did. On appeal, Levin Metals argued that, "to the extent that California law prevents imposition of liability on a dissolved corporation, it impedes and obstructs the basic purposes of CERCLA, and is invalid." 817 F.2d at 1451. The court of appeals rejected the argument. It distinguished between state laws limiting the imposition of liability and those determining capacity to be sued. It acknowledged that CERCLA might preempt the former but concluded that it did not preempt the latter: "Levin's interpretation, if followed, would prevent courts from looking to state law to determine whether a dissolved corporation could be sued in any case involving a federal cause of action." *Id.* Since the California corporation statute relied on was a capacity statute, it was not preempted.

This court declines to follow *Levin Metals*. As the Ninth Circuit recognized, "state law is preempted *whenever* it 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Id.* (emphasis added) (quoting *Michigan Canners & Freezers Ass'n v. Agricultural Mktg. & Bargaining Bd.*, 467 U.S. 461, 469, 104 S.Ct. 2518, 2523, 81 L.Ed.2d 399 (1984)). Surely Congress could preempt both state capacity statutes and state statutes limiting liability. The only question in a particular case is whether Congress did.

The fact that section 107 of CERCLA defines liability does not necessarily mean that it does not preempt state capacity law as well. The distinction the court of appeals relied on between statutes limiting liability and those defining capacity to be sued is a distinction without a difference. Every statute limiting liability defines, at least in part, one's capacity to be sued, and every statute limiting one's capacity to be sued also limits liability. Indeed, the surest way to limit one's liability is to take away his capacity to be sued. One cannot be held legally responsible for his acts if that responsibility cannot be enforced.

Applying the court of appeals' reasoning, a state could not directly limit the liability of owners and operators of hazardous waste sites, but it could indirectly limit their liability by taking away their capacity to be sued. The practical effect is the same, whether the limitation is direct or indirect.[11]

Congress clearly intended to hold responsible parties liable for cleanup costs "[n]otwithstanding any other provision or rule of

---

of UV's assets remain, although they may technically be held by the trust. Those assets might provide a source to which the government could look for payment if the corporation is ultimately held liable for any part of the response costs.

**10.** In doing so, the court noted that, "if suits against dissolved corporations ... are to be permitted, it is the province of the legislature ... to so provide." 631 F.Supp. at 304. The court was

referring to state legislatures, which traditionally have defined the powers and duties of corporations. But the power of Congress to define the scope of federal rights and duties is beyond peradventure.

**11.** In fact, an indirect restriction could thwart Congress's intent more effectively than any direct, partial limitation on liability.

law." 42 U.S.C. § 9607. It did not limit the preemptive force of section 107 to state liability laws, nor is this court willing to undermine congressional intent by reading such a restriction into the statute. This court concludes that, if the effect of a state capacity statute is to limit the liability of a party Congress meant to hold liable for cleanup costs, Congress intended CERCLA to preempt it.

This court's conclusion will not have the dire consequences the court of appeals envisioned. It does not mean that a party that lacked the capacity to be sued under state law could be sued in any case involving a federal cause of action. In the great majority of cases, the general capacity provisions of rule 17(b) would apply. Only where, as here, Congress clearly expresses its intention to supersede the general capacity provisions would a court be free to ignore state capacity law.

The court of appeals' position, on the other hand, would allow a state to nullify Congress's intent to hold responsible parties liable for cleanup costs simply by taking away their capacity to be sued. If, for example, under state law a dissolved corporation lacked the capacity to be sued, any corporation could escape CERCLA liability simply by dissolving before the government brought suit, perhaps to incorporate again after someone else had paid to clean up its hazardous wastes.

This case illustrates the dangers of the Ninth Circuit's position. UV dissolved in March 1980, while Congress was considering forerunners of CERCLA. Yet, under *Levin Metals,* if UV were a California corporation it would have escaped CERCLA liability, even if it dissolved for the sole

purpose of avoiding such liability, because CERCLA was not enacted until December 1980.[12]

Because the Ninth Circuit's reading of CERCLA would frustrate congressional intent, this court rejects it.

The trust argues that the real issue here is whether the plaintiff can reach assets in the hands of the shareholders of a dissolved corporation. That may be the government's ultimate objective, but that issue is not before the court, and the court expresses no opinion on it. Nor is the court faced with a situation in which the corporation's assets have been fully distributed and its affairs completely wound up, that is, where the corporation is not only dead but also buried. Here, the funeral is still going on. Corporate assets that might be used to pay cleanup costs have not yet been distributed to shareholders. Under these facts, the court holds that CERCLA overrides the general capacity provisions of rule 17(b) to the extent the rule might otherwise shield a dissolved corporation from liability.

The trust suggests that any undistributed assets are held by the trust, not by the corporation, and that the corporation should therefore be left out of this lawsuit.[13] However, the fact that a defendant may be judgment proof does not affect its capacity to be sued. It may be that the trust has all the assets. If UV is ultimately found liable, the government may have to decide whom it can collect from—the trust or the corporation. *Cf. United States v. Northeastern Pharmaceutical & Chem. Co.,* 810 F.2d at 742 (8th Cir.1986) ("Because NEPACCO's assets have already been liquidated and distributed to its share-

---

12. It is possible that a California corporation could escape liability even if it dissolved after CERCLA was enacted. In *Levin Metals,* the dissolved corporation argued that a cause of action under CERCLA does not arise until cleanup costs are actually incurred. The district court apparently accepted the argument, *see* 631 F.Supp. at 304–05, but the court of appeals expressly left open the issue, 817 F.2d at 1451. Thus, a California corporation might be able to escape CERCLA liability simply by dissolving before any cleanup costs are incurred.

13. The trust has also hinted that its liability under Maine law is limited to claims related to

the distribution of the dissolved corporation's assets, so if the government has no claim to assets as against the corporation, it can have no claim to them as against the trust. Given Congress's express purpose to impose liability on those responsible for hazardous waste sites, this implicit argument of the trust further counsels against the dismissal of the corporation at this time. The corporation should remain in the lawsuit if only as a means to ensure that assets now held by the trust will be available to satisfy any potential liability.

holders, ... it is unlikely that the government will be able to recover anything from NEPACCO"). But that issue is best left for another day.

## III.

Finally, the trust argues that UV must be dismissed from this action under Federal Rule of Civil Procedure 12(b)(4) and (5) because of insufficient process and insufficient service of process. Its only argument on this score is that service on the corporation was not effected by mailing the summons and complaint to the offices of the trust because the trust's officers have no authority to accept service of process on behalf of a corporation that has ceased to exist.[14]

The trust has not explained how it even has standing to raise this objection if it is not in fact the corporation's agent for service of process. If the trust is here solely in its own right, it cannot complain about defective service on the corporation.[15] On the other hand, if the trust is here on behalf of the corporation, it cannot easily claim that it has no authority to act for the corporation. The trust need not worry about standing, however, because the court concludes that its officers were authorized to accept service of process for the corporation.

Absent a special provision for service of process in other federal rules or statutes, rule 4 of the Federal Rules of Civil Procedure governs the procedure for serving the summons and complaint in actions in federal courts. Rule 4(d)(3) allows the summons and complaint against a corporation to be served on "an officer, a managing or general agent [of the corporation], or ... any other agent authorized by appointment or by law to receive service of process."

A corporation cannot escape service of process through dissolution if it is otherwise amenable to suit. See 4 C. Wright & A. Miller, *Federal Practice and Procedure* § 1069 at 396–97 (2d ed. 1987). Apparently the trust concedes that, if the corporation has the capacity to be sued, it is amenable to suit in Utah. Given this court's conclusion that UV can be sued under CERCLA, it follows that there must be some means of effecting service on it. The United States could have effected substitute service on UV through the director of the Utah Division of Corporations and Commercial Code, under Utah Code Annotated § 16-10-111 (1987) and Utah Rule of Civil Procedure 4(e)(4), made applicable in federal actions by Federal Rules of Civil Procedure 4(c)(2)(C)(i) and 4(e). However, such a statutorily designated agent for substitute service "could not defend the lawsuit [but] would have to notify the person charged with that responsibility and [in the case of a dissolved corporation] that would necessarily be the trustee in dissolution." *Henderson v. Northwestern Heating Eng'rs, Inc.*, 274 Minn. 396, 144 N.W.2d 46, 48 (1966).

Absent express provision for service of process against a dissolved corporation, courts have held that service may properly be had upon one of the directors-trustees. *See, e.g., W.T. Ratliff Co. v. Henley*, 405 So.2d 141 (Ala.1981) (service by certified mail to two of the three directors of the

---

**14.** The distinction between a rule 12(b)(4) motion to dismiss for insufficiency of process and a rule 12(b)(5) motion to dismiss for insufficiency of service of process is not always observed. The difference has been explained as follows:

An objection under Rule 12(b)(4) concerns the form of the process rather than the manner or method of its service. Technically, therefore, a Rule 12(b)(4) motion is proper only to challenge a noncompliance with the provisions of Rule 4(b) or any applicable provision incorporated by Rule 4(b) that deals specifically with the content of the summons. A Rule 12(b)(5) motion is the proper vehicle for challenging the mode of delivery or the lack of delivery of the summons and complaint.

5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1353 at 577–78 (1969) (footnotes omitted). In a case such as this, however, where the alleged defect is that the defendant has ceased to exist, arguably both motions apply, and courts "have ... treated a combination of the two motions as a proper procedure." *Id.* at 578. The court need not decide whether one of the motions would suffice because the trust has covered both bases.

**15.** At oral argument, counsel for the trust conceded that, although the trust had brought its motion on behalf of UV, his real concern was for the trust's potential derivative liability and that he was really representing the trust's interests.

former corporation perfected service on the dissolved corporation); *Henderson,* 274 Minn. 46, 144 N.W.2d 46 (1966) (service of process on the trustee in dissolution of a dissolved corporation was effective as to the corporation). Indeed, section 1122(2) of the Maine Business Corporation Act might be deemed an express authorization for the liquidating trustees to accept service of process in an action such as this involving the undistributed property of the corporation. *See supra* note 4 and accompanying text. Absent proof of any law to the contrary, the court concludes that service upon the trust is effective as to UV.

For the reasons stated above, UV Industries, Inc. Liquidating Trust's motion to dismiss as to UV Industries, Inc., is DENIED.

IT IS SO ORDERED.