BARTON SOLVENTS, INC., Plaintiff,

v.

SOUTHWEST PETRO–CHEM,
INC., Defendant,

v.

AGCO CORP. OF DELAWARE, et
al., Third–Party Defendants.

Civ. A. No. 91–2382–GTV.

United States District Court,
D. Kansas.

Oct. 26, 1993.

David R. Tripp, Richard L. Green, Stephen J. Owens, Jeffrey A. Befort, Stinson, Mag & Fizzell, Kansas City, MO, Mark D. Hinderks, Roger D. Stanton, M.J. Willoughby, Stinson, Mag & Fizzell, Overland Park, KS, for Barton Solvents, Inc.

James T. Price, Mark A. Thornhill, J. Bradley Leitch, Teresa A. Woody, Spencer, Fane, Britt & Browne, Kansas City, MO, David C. Linder, Zelle & Larson, Minneapolis, MN, for Southwest Petro–Chem, Inc.

Douglas D. Depew, Depew Law Firm, Neodesha, KS, for Airsol, Inc.

William T. Session, Brian Jones, The Session Law Firm, Kansas City, MO, for Ameron, Inc., E.I. Dupont de Nemours and Co., Goodyear Tire and Rubber Co.

Douglas P. McLeod, Blackwell, Sanders, Matheny, Weary & Lombardi, Kansas City, MO, David R. Erickson, Blackwell, Sanders, Matheny, Weary & Lombardi, Overland Park, KS, for Beech Aircraft Corp.

Charles P. Efflandt, Foulston & Siefkin, Wichita, KS, for The Boeing Co., New Coleman Holdings, Inc.

Jack L. Lively, Hall, Levy, Lively, DeVore & Bell, Coffeyville, KS, for James C. Burwell, Gertrude M. Clift, Cliftco, Inc.

Thomas E. Rice, Jr., John W. Cowden, Baker, Sterchi & Cowden, Kansas City, MO, for Cessna Aircraft Co.

Robert F. Rowe, Jr., McAnany, Van Cleave & Phillips, P.A., Lenexa, KS, Lester C. Arvin, Arvin & Arvin, Wichita, KS, Rosemary Podrebarac, McAnany, Van Cleave & Phillips, P.A., Kansas City, KS, for Ronald Coleman, Oliver Elliott, National–Spencer, Inc.

William T. Session, Brian Jones, The Session Law Firm, Kansas City, MO, George A. Phair, Conoco, Inc., Houston, TX, for Continental Oil Co.

William J. Denton, William F. Ford, William F. Ford, Jr., Michael J. Abrams, Gage & Tucker, Kansas City, MO, for General Motors Co.

Jeffrey L. Kennedy, Martin, Pringle, Oliver, Wallace & Swartz, Wichita, KS, for Glickman, Inc.

James R. Fleetwood, Bradley E. Haddock, Thomas A. Loftus, III, Koch Industries, Inc., Wichita, KS, for Koch Engineering Co., Koch Industries, Inc.

Richard W. Hird, James P. Zakoura, William F. Watkins, Smithyman & Zakoura,

Chtd., Overland Park, KS, for Moline Paint Mfg. Co.

Christopher M. McDonald, Gary L. Whittier, Shook, Hardy & Bacon, Kansas City, MO, David Overlock Stewart, J. Daniel Berry, Thomas B. Smith, Ropes & Gray, Washington, DC, for Rubbermaid Specialty Products, Inc.

William J. Denton, William F. Ford, William F. Ford, Jr., Michael J. Abrams, Gage & Tucker, Kansas City, MO, Peter B. Freeman, Ellen L. Partridge, Jenner & Block, Chicago, IL, for Tenneco Oil Co.

Kathleen M. Whitby, Husch & Eppenberger, St. Louis, MO, Robert P. Riordan, Husch & Eppenberger, John W. Cowden, Baker, Sterchi & Cowden, Kansas City, MO, for Texaco Refining and Marketing, Inc.

Jennifer S. Graham, Lathrop & Norquist, Overland Park, KS, Philip J. Donnellan, Jonathan R. Haden, Gary D. Justis, Lathrop & Norquist, Kansas City, MO, for Union Pacific Resources.

William F. Bradley, Jr., Hinkle, Eberhart & Elkouri, Wichita, KS, for Universal Lubricants, Inc.

Thomas J. Lasater, Thomas D. Kitch, Scott D. Jensen, Fleeson, Gooing, Coulson & Kitch, Wichita, KS, for Wilko Paint, Inc.

### MEMORANDUM AND ORDER

VAN BEBBER, District Judge.

This case is before the court on the following motions:

Third and Fourth Party Defendant Gertrude M. Clift's Motion to Dismiss or in the Alternative to Stay the Trial of the Third–Party Complaint and Fourth–Party Complaint (Doc. 439); and

Fourth Party Defendant Cliftco, Inc.'s Motion to Dismiss or in the Alternative to Stay the Trial of the Fourth Party Complaint (Doc. 487).

For the reasons set forth in this memorandum and order, both motions are denied.

This is an environmental cleanup action brought by plaintiff Barton Solvents, Inc. against defendant and third-party plaintiff Southwest Petro–Chem, Inc. ("Southwest") arising out of a release or threatened release of hazardous waste at a site in Valley Center, Kansas. Southwest brought third-party complaints against numerous third-party defendants, including Moline Paint Mfg. Co. ("Moline"), Cliftco, Inc. ("Cliftco"), and Gertrude M. Clift asserting claims arising under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9601, *et seq.*, and Kansas common law. Moline later brought a fourth-party complaint against Cliftco and Mrs. Clift.

Because the motions of Mrs. Clift and Cliftco raise virtually identical issues with respect to the claims of Southwest and Moline, the motions will be discussed together.

## I. MOTIONS TO DISMISS

Cliftco and Mrs. Clift filed their motions to dismiss pursuant to Fed.R.Civ.P. 12(b)(6). The issues raised in both motions concern the capacity of a corporation and shareholder to be sued after the corporation has been dissolved. The complaints of Southwest and Moline both allege that Cliftco was dissolved in 1986.

### A. Relevant Facts

The following factual allegations are based upon the Third–Party Complaint filed by Southwest (Doc. 413), and the Fourth–Party Complaint filed by Moline (Doc. 408) against Mrs. Clift and Cliftco. Allegations in these complaints must be taken as true for purposes of this motion to dismiss. *Grider v. Texas Oil & Gas Corp.,* 868 F.2d 1147, 1148 (10th Cir.), *cert. denied,* 493 U.S. 820, 110 S.Ct. 76, 107 L.Ed.2d 43 (1989).

Plaintiff Barton Solvents brought this action pursuant to CERCLA to recover costs Barton Solvents allegedly incurred and will incur to respond to a release or threatened release of hazardous substances at its site in Valley Center, Kansas. Barton Solvents named Southwest as defendant, and Southwest later sued Moline seeking cost recovery and contribution under CERCLA, indemnification under Kansas law, and a declaratory judgment. Southwest alleged that Moline was the successor in interest to Service Paint

Manufacturing Co. (later known as Cliftco, Inc.), and that Service Paint had arranged for disposal of hazardous materials at the Barton Solvents site.

Moline had purchased the assets of Service Paint pursuant to an agreement dated April 10, 1983. Immediately after Moline and Service Paint entered into the agreement, Service Paint changed its name to Cliftco, Inc. Gertrude M. Clift and James C. Burwell were shareholders in Cliftco. The purchase agreement called for Moline to make annual payments to Cliftco in the amount of $45,-300.85 plus interest. The last payment under this agreement was due to be paid on May 2, 1993.

Cliftco was dissolved on May 12, 1986, and Cliftco's assets were distributed to Mrs. Clift and Mr. Burwell. The assets that were distributed included the right to receive the annual payments owed to Cliftco by Moline pursuant to the purchase agreement. Since the dissolution, those payments have been made to Mrs. Clift or Mr. Burwell.

Southwest and Moline allege that Mrs. Clift managed the business and affairs of Service Paint before and after it became known as Cliftco. They further allege that as majority shareholder and Secretary/Treasurer of Service Paint and Cliftco, Mrs. Clift was responsible for and had control over the company's policies and practices with regard to disposal of hazardous wastes sent to the Barton Solvents site. They also contend that Mrs. Clift knew or should have known of Cliftco's environmental liabilities before its dissolution, but made no provisions for satisfying those liabilities.

Southwest and Moline brought their complaints against Cliftco and Mrs. Clift under CERCLA and state law to recover costs already incurred or that may be incurred in the future to respond to the release of hazardous materials at the Barton Solvents site.

### B. Legal Standard

■ On a motion to dismiss, the court must assume the truth of all well-pleaded facts in plaintiff's complaint and view them in the light most favorable to plaintiff. *Zinermon v. Burch*, 494 U.S. 113, 118, 110 S.Ct.

975, 979, 108 L.Ed.2d 100 (1990); *Swanson v. Bixler*, 750 F.2d 810, 813 (10th Cir.1984). All reasonable inferences must be indulged in favor of plaintiff, *Swanson*, 750 F.2d at 813, and the pleadings must be liberally construed. *Gas-a-Car, Inc. v. American Petrofina, Inc.*, 484 F.2d 1102 (10th Cir.1973); Fed.R.Civ.P. 8(a). The issue in reviewing the sufficiency of a complaint is not whether plaintiff will ultimately prevail, but whether he is entitled to offer evidence to support his claims. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). The court may not dismiss a case for failure to state a claim "unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957).

### C. Cliftco's Motion

■ The legal status of Cliftco is governed by Oklahoma law. Cliftco contends that because this action was not brought within three years of its dissolution, Oklahoma law dictates that all claims against it must be dismissed. The statute provides: "Corporations, whether they expire by their own limitations or are otherwise dissolved, nevertheless shall be continued for the term of 3 years from such expiration or dissolution or for such longer period as the district court shall in its discretion direct." Okla.Stat. tit. 18, § 1099.

The parties disagree on whether Oklahoma state law is preempted by CERCLA. In support of its position that Oklahoma state law is not preempted by CERCLA, Cliftco points to the Federal Rules of Civil Procedure. Rule 17(b) states: "The capacity of a corporation to sue or be sued shall be determined by the law under which it was organized."

Southwest and Moline argue that Oklahoma law is preempted by the CERCLA provisions. They contend that Congress has the power to supersede the Federal Rules of Civil Procedure, and has done so in its enactment of CERCLA. They point to the express language of the statute that attaches liability "[n]otwithstanding any other provi-

sion or rule of law, and subject only to the defenses set forth in subsection (b) of this section." 42 U.S.C. § 9607(a)(2). Southwest and Moline also contend that the Oklahoma statute must be preempted since it would stand in the way of CERCLA's broad remedial objectives.

This court, consistent with its holding in a previous case, agrees with the position of Southwest and Moline that CERCLA preempts Oklahoma law. *See Bancamerica Commercial Corp. v. Mosher Steel of Kansas, Inc.*, No. 90–2325–V, 1992 WL 81983, at *3 (D.Kan. Mar. 12, 1992) (holding that CERCLA preempted state laws governing the capacity of dissolved corporations, as well as Fed.R.Civ.P. 17(b)). Although the Tenth Circuit has not yet addressed this issue, the clear trend among courts is to construe CERCLA to supersede Rule 17(b) and to preempt state law. *See BASF Corp. v. Central Transport, Inc.*, 830 F.Supp. 1011 at 1013 (E.D.Mich.1993); *City and County of Denver v. Adolph Coors Co.*, 813 F.Supp. 1471, 1474 (D.Colo.1992); *Stychno v. Ohio Edison Co.*, 806 F.Supp. 663, 668–69 (N.D.Ohio 1992); *Traverse Bay Area Intermediate School Dist. v. Hitco, Inc.*, 762 F.Supp. 1298, 1301 (W.D.Mich.1991); *United States v. Distler*, 741 F.Supp. 643, 646 (W.D.Ky.1990); *United States v. Sharon Steel Corp.*, 681 F.Supp. 1492, 1498 (D.Utah 1987). *But see Levin Metals Corp. v. Parr-Richmond Terminal Co.*, 817 F.2d 1448 (9th Cir.1987) (relying on Rule 17(b) to defer to state capacity law); *Columbia River Service Corp. v. Gilman*, 751 F.Supp. 1448 (W.D.Wash.1990) (following, but criticizing, the binding precedent of the circuit court); *Onan Corp. v. Industrial Steel Corp.*, 770 F.Supp. 490, 495 (D.Minn.1989), *aff'd*, 909 F.2d 511 (8th Cir.), *cert. denied*, 498 U.S. 968, 111 S.Ct. 431, 112 L.Ed.2d 414 (1990) ("[D]issolution, followed by the three-year survival period, terminates the corporation's comatose condition and renders the corporation legally dead. Not even the important policy goals underlying CERCLA can resurrect [the defendant].").

Congress has the plenary power to supersede a Rule of Civil Procedure. "If Congress' intent to supersede a Rule 'clearly appears' in the statute, then the rule must give way to the statute." *Hitco*, 762 F.Supp. at 1301 (quoting *Sharon Steel*, 681 F.Supp. at 1497–98). The clear language of 42 U.S.C. § 9607, quoted above, indicates that Congress "intended to hold responsible parties liable for cleanup costs '[n]otwithstanding any other provision or rule of law.'" *Sharon Steel*, 681 F.Supp. at 1498–99 (quoting 42 U.S.C. § 9607(a)(2)). To hold otherwise would allow corporations to escape CERCLA liability by simply dissolving before the government brought suit, thus circumventing CERCLA's mandate to effectuate cleanup of hazardous wastes by placing financial liability on those responsible for creating the harmful conditions. *See City and County of Denver*, 813 F.Supp. at 1474; *Sharon Steel*, 681 F.Supp. at 1495, 1498. "Since environmental cleanup may occur years after the activities that caused the pollution, mere dissolution should not be allowed to block further inquiry into the status of the identifiable resources of the companies responsible for that pollution." *BASF Corp. v. Central Transport, Inc.*, 830 F.Supp. 1011 at 1013 (E.D.Mich.1993).

Finding that CERCLA preempts Oklahoma law regarding a dissolved corporation's capacity to be sued does not, however, fully resolve the issue before the court. A dissolved corporation may have ceased to exist such that even CERCLA liability can no longer attach. Courts have made a distinction between corporations that are "dead" and those that are "dead and buried." *See Sharon Steel*, 681 F.Supp. at 1498. A "dead" corporation is one that has dissolved but still holds assets that can be reached by CERCLA. A "dead and buried" corporation has dissolved and has no assets remaining. It has ceased to exist as a "person" that can be held liable under CERCLA. *Hitco*, 762 F.Supp. at 1301.

Applying the distinction to this case, the court is unable to conclusively determine that Cliftco is "dead and buried." Southwest and Moline have alleged in their complaints that Cliftco was dissolved in 1986 and its assets were distributed to Mrs. Clift and Mr. Burwell. Included in those assets was the right to receive annual payments owed to Cliftco

pursuant to Moline's purchase agreement. Southwest and Moline allege that Mrs. Clift has received more than $362,000 in payments under that agreement, and that these assets are identifiable to Cliftco.[1] Cliftco's allegation that the corporation has no assets is not sufficient to prevail on a motion to dismiss. Southwest and Moline should have an opportunity to further discover and identify assets which may be attributable to Cliftco. Dismissing the claims at this point is premature. See BASF Corp. v. Central Transport, Inc., 830 F.Supp. 1011 at 1013 (E.D.Mich.1993) ("Plaintiffs must have the opportunity to conduct discovery in order to determine whether [defendant] still possesses or controls assets that subject it to CERCLA liability. The court cannot merely rely on defendant's allegations that the assets of [defendant] have been completely distributed."); Stychno, 806 F.Supp. at 670 ("The third-party plaintiff is entitled to determine whether the corporation is both dead and buried."); Hitco, 762 F.Supp. at 1301 n. 3 ("Allowing this suit to proceed will give plaintiff an opportunity to conduct discovery on what assets, if any, [defendant] still holds.").

### D. Mrs. Clift's Motion

■ Oklahoma law prohibits direct action against stockholders for the debts of a corporation until after a judgment is obtained against the corporation and execution is returned unsatisfied. Okla.Stat. tit. 18, § 1124(B).[2] Mrs. Clift argues that this protects her from liability for Cliftco's debts. She further contends that the "equitable trust fund doctrine," under which former stockholders can be held liable for tort claims of dissolved corporations, applies for only three years after the corporation dissolves. See Green v. Oilwell, Div. of U.S. Steel Corp., 767 P.2d 1348 (Okla.1989).

Even if the court were to accept Mrs. Clift's arguments, it still could not dismiss

the complaints against her. Southwest and Moline have alleged in their complaints that Mrs. Clift, as majority shareholder and Secretary/Treasurer of Service Paint and Cliftco, was responsible for the policies and practices with regard to disposal of hazardous wastes. These claims are asserted against her personally. The assertions in the complaint clearly fall within CERCLA's authorization of suits against "any person who ... arranges for disposal or treatment or transport ... of hazardous substances." 42 U.S.C. § 9607. Corporate officers and shareholders can be personally liable for arrangement activities over which they had control. Donahey v. Bogle, 987 F.2d 1250, 1254 (6th Cir. 1993); United States v. Northeastern Pharmaceutical & Chemical Co., Inc., 810 F.2d 726, 743 (8th Cir.1986), cert. denied, 484 U.S. 848, 108 S.Ct. 146, 98 L.Ed.2d 102 (1987); New York v. Shore Realty Corp., 759 F.2d 1032, 1043 (2d Cir.1985).

Further, to the extent that Mrs. Clift could be personally liable for any judgment against Cliftco, the court has already decided that CERCLA preempts the Oklahoma statute requiring actions to be brought within three years of a corporation's dissolution. Any "equitable trust fund doctrine" recognized by Oklahoma courts, if applicable to the facts of this case, would therefore not be limited to only three years after corporate dissolution.

### II. MOTIONS FOR STAY

■ As an alternative to their motions to dismiss, Mrs. Clift and Cliftco have moved the court to stay the complaints against them in this case pending resolution of an unrelated case in the Northern District of Oklahoma. Moline, Mrs. Clift, and Cliftco are all parties in that action, but Southwest is not.[3] The movants allege that the identical issue regarding the limitations period for actions against dissolved corporations and their for-

---

1. The complaints allege that the last payment under that agreement was due on May 2, 1993. The court has received no information regarding the status of that payment.

2. The statute reads: "No such suits shall be brought against any officer, director or shareholder for any debt of a corporation of which he

is an officer, director or shareholder, until judgment is obtained therefore against the corporation and execution thereon returned unsatisfied."

3. The Oklahoma case is identified as Atlantic Richfield Co. v. American Airlines; Moline Paint Mfg. Co. v. Cliftco, Gertrude M. Clift and James C. Burwell, Case No. 89–C–868, 869, 859–B.

mer shareholders is also pending before that court.

 It is well settled that a district court has the power to stay the proceedings before it, as an inherent part of the court's power to control its docket. *Landis v. North American Co.*, 299 U.S. 248, 254, 57 S.Ct. 163, 166, 81 L.Ed. 153 (1936); *Pet Milk Co. v. Ritter*, 323 F.2d 586, 588 (10th Cir.1963). This power, however, is clearly within the court's discretion, to be used for the purpose of "economy of time and effort for itself, for counsel, and for litigants." *Landis*, 299 U.S. at 254, 57 S.Ct. at 166.

The court finds no significant benefit to be gained by awaiting the outcome of the Oklahoma case. Cliftco and Mrs. Clift have not demonstrated that they will suffer any inordinate hardship by going forward with both cases. Although the limitations period question may be common to both cases, no matter what the outcome in Oklahoma, the rest of this case must still be tried as the other issues in the cases are completely different. Neither court would be bound by the other's decision. In addition, Southwest is not a party in the Oklahoma suit. While the *Landis* Court held that a stay may be granted even if the parties in both cases are not identical, the Court also cautioned that the interests of any absent parties must be first considered before granting a stay: "Only in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both." *Landis*, 299 U.S. at 255, 57 S.Ct. at 166.

Finally, there are compelling reasons for proceeding with this case in an expeditious manner. The number of parties and factual complexity of this case dictate that the case proceed according to schedule in order to minimize the already substantial litigation costs. It is essential that the liabilities, whatever they may be, of all parties be decided together.

### III. CONCLUSION

The movants have failed to establish that the Southwest and Moline complaints state no cause of action for which relief can be granted. In addition, the court has found no compelling reason to exercise its discretionary power to stay these proceedings, and the alternative motions for a stay is also denied.

IT IS, THEREFORE, BY THE COURT ORDERED that Gertrude M. Clift's Motion to Dismiss or in the Alternative to Stay Trial (Doc. 439) is denied.

IT IS FURTHER ORDERED that Cliftco, Inc.'s Motion to Dismiss or in the Alternative to Stay Trial (Doc. 487) is also denied.

Copies of this order shall be mailed to counsel of record for the parties.

**IT IS SO ORDERED.**