**WITCO CORPORATION, Plaintiff,**

v.

**Jeanne v. BEEKHUIS, As Executrix for the Estate of H. Albert Beekhuis, Brandywine Chemical Corporation, and Wilmington Trust Company, as Trustee for Trust Agreement dated August 9, 1985 between H. Albert Beekhuis and Wilmington Trust Company, and Jeanne v. Beekhuis, individually, Defendants.**

**Civ. A. No. 92–301 (RRM).**

United States District Court,
D. Delaware.

May 20, 1993.

David S. Swayze, Judith Nichols Renzulli, Kevin W. Goldstein, Duane, Morris & Heckscher, Wilmington, DE, for plaintiff.

Thomas R. Hunt, Jr., Thomas R. Pulsifer, R. Judson Scaggs, Jr., Morris, Nichols, Arsht & Tunnell, Wilmington, DE, for defendant Wilmington Trust Co.

William Poole, James F. Burnett, W. Laird Stabler, III, Potter Anderson & Corroon, Wilmington, DE, for defendant Jeanne Beekhuis.

Robert W. Whetzel, Richards, Layton & Finger, Wilmington, DE, for defendant Brandywine Chemical Co.

## MEMORANDUM OPINION

McKELVIE, District Judge.

This is an action for contribution under the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. § 9601, *et seq.*, ("CERCLA"). The plaintiff, Witco Corporation ("Witco"), asserts its claim against the following defendants: Jeanne v. Beekhuis, daughter of Dr. H. Albert Beekhuis and executrix for his estate; Wilmington Trust Company, ("Wilmington Trust"), trustee of two trusts created by Dr. Beekhuis; and, Brandywine Chemical Company ("Brandywine Chemical").

Witco's claim relates to a parcel of land ("the site") previously owned by Halby Products and Halby Chemical Company (collectively "Halby"). Dr. Beekhuis was an officer of and the majority stockholder in Halby. The site became Witco's property in 1972 when Halby merged into Witco's subsidiary, Argus Chemical Company ("Argus"). In 1977, Argus sold the site to Brandywine Chemical. In 1986, because the soil at the site was contaminated with various chemicals including lead, mercury, cyanide, and arsenic, the EPA placed the site on the CERCLA National Priorities List. In 1992, Witco entered into a Consent Decree with the EPA to provide for the cleanup of the site.

Witco now seeks contribution from the defendants for the costs associated with cleaning up the site. Witco's claims against Jeanne Beekhuis and Wilmington Trust derive from its claim against the estate of Dr. Beekhuis.

Both Jeanne Beekhuis and Wilmington Trust have filed Motions to Dismiss or, Alternatively, for Summary Judgment. For the reasons that follow, the Court will grant these defendants' motions for summary judgment.

## I. FACTS

Dr. H. Albert Beekhuis was an officer of and a majority stockholder in Halby, the owner of the site which became the focus of this dispute. Halby operated a chemical manufacturing and distribution business on the site. In 1972, Halby merged into Argus, a wholly owned subsidiary of Witco. Argus continued to use the site in its chemical business until it sold the site to Brandywine Chemical in 1977. From that time to the present, Brandywine Chemical has used the site as a storage and repackaging facility for chemicals.

In August, 1985, Dr. Beekhuis entered into a Trust Agreement creating two separate trusts, with Wilmington Trust as the trustee

for each. The first trust, into which Dr. Beekhuis placed all of his assets, was to provide for income and maintenance for Dr. Beekhuis and his dependents during his lifetime, and also to provide his estate with funds to pay his debts and other expenses associated with closing his estate. The second trust was a "Residuary Trust" which would be funded by property remaining after the first trust had been closed. Jeanne Beekhuis is the primary beneficiary of the Residuary Trust. Upon her death, the assets remaining in the Residuary Trust will be transferred to various charities.

On June 10, 1986, the EPA placed the site on the CERCLA National Priorities List because it had detected various hazardous chemicals, such as lead, mercury, cyanide, and arsenic, in the soil at the site.

On October 26, 1988, because of a release or a substantial threat of release of hazardous substances at the site, the EPA commenced a Remedial Investigation and Feasibility Study.

On October 28, 1988, Witco notified Dr. Beekhuis of his potential liability under CERCLA. Witco also requested certain insurance information from Dr. Beekhuis and informed him that the EPA had already spent approximately $700,000 investigating the site. On January 21, 1989, Dr. Beekhuis responded through his attorney by providing the requested insurance information.

On March 21, 1989, Dr. Beekhuis died. Jeanne Beekhuis, Dr. Beekhuis' daughter, was appointed executrix of his estate. Eight months later, on November 21, 1989, the Trustee placed all of the property remaining in the first trust into the Residuary Trust. Between the date of Dr. Beekhuis' death and November 21, 1989, Witco took no action with respect to any possible CERCLA contribution claim against Dr. Beekhuis' estate.

On January 18, 1990, Witco wrote to William Poole, the lawyer for Dr. Beekhuis' estate, advising him of Witco's potential claim for contribution, and seeking the imposition of a constructive trust on the estate's assets pending resolution of the environmental problem at the site. On January 22, 1990, Mr. Poole responded to Witco's letter and advised Witco that it was premature to request the imposition of a constructive trust as no claim had yet been asserted by the EPA against Witco.

On December 4, 1990, Witco filed in the Court of Chancery in New Castle County, Delaware, a petition for a constructive trust on Dr. Beekhuis' estate. The Chancery Court dismissed that action for failure to state a claim. *In re: Estate of H. Albert Beekhuis*, No. 11,853, *slip op.* (Del.Ch. Jan. 13, 1992).

On June 28, 1991, the EPA published its Final Record of Decision ("ROD") recommending remedial action for the site. The ROD recommended excavation, stabilization, backfill, and capping of contaminated surface soil at the site.

In August, 1991, the EPA notified Witco, Argus, Brandywine Chemical, and the estate of Dr. Beekhuis that each was a potentially responsible party ("PRP") for the discharge of hazardous waste at the site. Each party named as a PRP was given the opportunity to participate in the planned remedial process for the site. Witco subsequently executed a consent decree with the EPA for the remediation of the contaminated soil. *United States v. Witco Corp.*, Consent Decree, C.A. 92–93 (D.Del. April 9, 1992). Pursuant to the Consent Decree and the ROD, Witco has already incurred remedial response costs and expenses for the site.

On May 26, 1992, Witco filed its claim for contribution against Jeanne Beekhuis. On September 29, 1992, Witco amended its complaint to include as defendants Wilmington Trust and Brandywine Chemical.

## II. DISCUSSION

Federal Rule of Civil Procedure 56(c) provides that a party is entitled to summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." A party seeking summary judgment always bears the initial responsibility of informing the Court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories and admissions on

file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Where, as here, the nonmoving party opposing summary judgment has the burden of proof at trial on the issue for which summary judgment is sought, he must then make a showing sufficient to establish the existence of a genuine issue for trial. *Id.* at 324, 106 S.Ct. at 2553. If the nonmoving party fails to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof, the moving party is entitled to judgment as a matter of law. *Id.* at 322, 106 S.Ct. at 2552. Moreover, the mere existence of some evidence in support of the nonmoving party will not be sufficient to support a denial of a motion for summary judgment; there must be enough evidence to enable a jury to reasonably find for the nonmoving party on that issue. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

Jeanne Beekhuis and Wilmington Trust offer three grounds in support of their motions for summary judgment: (1) the Plaintiff's CERCLA claims are barred by the Delaware nonclaim statute, 12 Del.C. § 2102(c); (2) the claims are barred under the doctrine of laches; and, (3) in seeking to require the Trustee to pay a debt incurred during Dr. Beekhuis' lifetime, the plaintiff seeks to enforce a Trust provision that no longer exists because the Trust was closed and is now devoid of assets.

In response, the plaintiff argues that: (1) this action is timely because it falls within the CERCLA statute of limitations which preempts the Delaware nonclaim statute and therefore governs this action; and, (2) this is not an action to specifically enforce a provision of the trust, rather it is a contribution claim under CERCLA against the estate.

For the reasons set forth below, the Court finds that the CERCLA limitations provision does not preempt the Delaware nonclaim statute, and that the plaintiff's claim is barred by the Delaware nonclaim statute.[1] Accordingly, the Court will grant summary judgment as to both Jeanne Beekhuis and Wilmington Trust. The Court need not address, therefore, the parties' remaining arguments.

## A. *Preemption*

The defendants contend that the Delaware nonclaim statute, 12 Del.C. § 2102, applies in this case. Section 2102 provides, in pertinent part:

All claims against a decedent's estate which arose before the death of the decedent ... whether due or to become due, absolute or contingent, liquidated or unliquidated, founded on contract, tort or other legal basis ... are barred against the estate, the personal representative and the heirs and devisees of the decedent unless presented as provided in § 2104 of this title within 8 months of the decedent's death whether or not the notice referred to in § 2101 of this title have been given.[2]

The defendants argue that because the plaintiff failed to present its contingent CERCLA contribution claim to the personal representative of Dr. Beekhuis' estate by November 21, 1989, eight months after Dr. Beekhuis' death, the claim is now forever barred under the Delaware nonclaim statute.

The plaintiff contends, however, that the CERCLA limitations period for contribution

1. The Court will assume without deciding that the plaintiff is correct in arguing that the Trustee is a proper party, and that if the estate were liable under CERCLA then the assets of the estate could be traced and retrieved in order to satisfy a judgment.

2. 12 Del.C. § 2104 provides, in pertinent part: Claims against a decedent's estate may be presented as follows: (1) The claimant may deliver or mail to the personal representative a written statement of claim indicating its basis, the name and address of the claimant and the amount claimed, or may file a written statement of claim, in the form prescribed by rule in the Court of Chancery, with the Register of Wills. The claim is deemed presented on the first to occur of the receipt of the written statement of claim by the personal representative, or the filing of the claim with the Register of Wills. If a claim is not yet due, the date when it will become due shall be stated. If the claim is contingent or unliquidated, the nature of the uncertainty shall be stated.... Failure to describe ... the nature of any uncertainty and the due date of a claim not yet due does not invalidate the presentation made.

claims of three years from the date of a judgment or a judicially approved settlement applies to this case. *See* 42 U.S.C. § 1913(g)(3). Section 1913(g)(3) provides, in pertinent part:

**(3) Contribution**

No action for contribution for any response costs or damages may be commenced more than 3 years after—

(A) the date of judgment in any action under this Act for recovery of such costs or damages, or

(B) the date of ... entry of a judicially approved settlement with respect to such costs or damages.

Accordingly, the plaintiff contends it had three years from April 29, 1992, the date of the Consent Decree, to file its CERCLA claim. As the plaintiff filed its claim on May 25, 1992, it contends it filed within the CERCLA limitations period. The plaintiff further asserts that to the extent the two statutes conflict, the CERCLA statute of limitations preempts the Delaware nonclaim statute.

■■■ In considering whether a federal law preempts a state law, absent explicit preemptive language in the federal law, a court must consider whether Congress intended to preempt the state law. *Pacific Gas & Electric Co. v. State Energy Resources Conservation and Development Commission,* 461 U.S. 190, 203–04, 103 S.Ct. 1713, 1722, 75 L.Ed.2d 752 (1983). Such an intent can be found where the scheme of federal regulation is so pervasive that it is reasonable to assume that Congress has left no room for supplementation by the states. *Id.* at 204, 103 S.Ct. at 1722.

The United States Court of Appeals for the Third Circuit has held that in enacting CERCLA Congress has not explicitly preempted all state law on environmental subject matter, nor has Congress enacted such a comprehensive scheme of regulation as to provide no room for supplementation by the states. *Manor Care, Inc. v. Yaskin,* 950 F.2d 122, 125–26 (3d Cir.1991) (citing *Exxon v. Hunt,* 475 U.S. 355, 106 S.Ct. 1103, 89 L.Ed.2d 364 (1986)); *see also New York v. Shore Realty Corp.,* 759 F.2d 1032 (2d Cir. 1985).

■■■ Even if Congress has not completely displaced state regulation in a given area, federal law preempts any conflicting state law. *Pacific Gas & Electric,* 461 U.S. at 204, 103 S.Ct. at 1722. "Such a conflict arises when 'compliance with both federal and state regulations is a physical impossibility,' or where state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.' " *Id.* at 204, 103 S.Ct. at 1722 (quoting *Florida Lime & Avocado Growers, Inc. v. Paul,* 373 U.S. 132, 142–43, 83 S.Ct. 1210, 1217–18, 10 L.Ed.2d 248 (1963) and *Hines v. Davidowitz,* 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941)). Thus, there are two questions to ask in determining whether a state law conflicts with a federal law: 1) is it possible to comply with both laws; and, 2) does the state law stand as an obstacle to the intent of Congress?

### 1. *Is it possible to comply with both statutes?*

■■■ The Delaware nonclaim statute requires parties with contingent claims against an estate to notify the estate of the claim within eight months of the decedent's death. 12 Del.C. § 2102. The CERCLA statute of limitations provides that actions for contribution must be brought within 3 years of the date of judgment or a judicially approved settlement. 42 U.S.C. § 1913(g)(3). It is not impossible to comply with both of these statutes. One can notify an estate of a contingent claim within eight months of a decedent's death, and also file a contribution action within three years of the date of a judgment for response costs.

### 2. *Does the Delaware nonclaim statute stand as an obstacle to Congressional intent?*

The purpose and objective of CERCLA is to provide broad powers to respond to hazardous waste disposal, and to ensure "that those responsible for problems caused by the disposal of chemical poisons bear the cost and responsibility for remedying the harmful conditions they created." *United States v. Reilly Tar & Chemical Corp.,* 546 F.Supp. 1100, 1112 (D.Minn.1982). CERCLA pro-

vides that responsible parties are subject to CERCLA liability "[n]otwithstanding any other provision or rule of law, and subject only to" the specified defenses. 42 U.S.C. § 9607(a).

In the probate context, two District Courts have expressly held that state nonclaim statutes stand as an obstacle to Congress' intent in enacting CERCLA. *Soo Line Railroad Co. v. B.J. Carney & Co.*, 797 F.Supp. 1472 (D.Minn.1992); *Freudenberg–NOK General Partnership v. Thomopoulos*, 1991 WL 325290, 1991 U.S. Dist. LEXIS 19421 (D.N.H. December 9, 1991). Without significant discussion, the *Thomopoulos* court found CERCLA and the nonclaim statute in conflict. *Id.* 1991 WL 325290 at *2, at *4. The court considered the legislative history of CERCLA and noted that Congress intended for CERCLA to be given a broad and liberal instruction. *Id.* 1991 WL 325290 at *4, at *8–9 (citing *United States v. Reilly Tar and Chemical Corp.*, 546 F.Supp. 1100, 1112 (D.Minn.1982)). The court then held that there was "little doubt as to Congress' intent to preempt conflicting state statutes in responding to the kinds of environmental hazards posed by" the offending site. *Id.* 1991 WL 325290 at *4, at *9.

The *Soo Line* court essentially relied on the *Thomopoulos* decision and made the observation that "[s]tate law cannot circumscribe the scope of federal law. To the extent that state law purports to release responsible parties from liability for releasing hazardous wastes into the environment, CERCLA preempts state law." *Soo Line*, 797 F.Supp. at 1485.

■ In order to determine whether Congress has implicitly provided for federal preemption of state law, courts must consider the federal scheme of legislation, the role of the states in that scheme, and whether the field of legislation is one in which the federal interest is so dominant "that it precludes enforcement of state laws on the subject." *Davis v. Britton*, 729 F.Supp. 189, 191 (D.N.H.1989) (quoting *Fidelity Federal Savings and Loan Assoc. v. De La Cuesta*, 458 U.S. 141, 153, 102 S.Ct. 3014, 3022, 73 L.Ed.2d 664 (1982)). Accordingly, courts should be particularly reluctant to find preemption in a field of law traditionally dominated by the states. *English v. General Electric Company*, 496 U.S. 72, 79, 110 S.Ct. 2270, 2275, 110 L.Ed.2d 65 (1990).

■ For the following reasons, the Court finds that because the federal interest in enforcing CERCLA against the estates of deceased individuals is somewhat diminished as compared to the contexts in which CERCLA has been found to be preemptive, and because states have a particular interest in settling estates according to rules traditionally promulgated exclusively by states, Congress could not have intended implicitly to preempt the Delaware nonclaim statute. The Court consequently declines to follow the holdings of *Soo Line* and *Thomopolous*.

First, Congress specifically noted the following in providing for contribution under CERCLA:

**(1) Contribution**

Any person may seek contribution from any other person who is liable or potentially liable under section 9607(a) of this title during or following any civil action under section 9606 of this title or under section 9607(a) of this title. *Such claims shall be brought in accordance with this section and the Federal Rules of Civil Procedure,* and shall be governed by Federal law.

42 U.S.C. § 9613(f) (emphasis added). Thus, it is clear under CERCLA that Congress intends for courts to follow the Federal Rules of Civil Procedure, including Rule 17(b), which provides in pertinent part:

**(b) Capacity to Sue or be Sued.**

The capacity of an individual, other than one acting in a representative capacity, to sue or be sued shall be determined by the law of the individual's domicile. The capacity of a corporation to sue or be sued shall be determined by the law under which it was organized. In all other cases capacity to sue or be sued shall be determined by the law of the state in which the district court is held....

As a result, state capacity statutes, as opposed to liability statutes, are not preempted under CERCLA. *See Levin Metals Corp. v. Parr–Richmond Terminal Co.*, 817 F.2d 1448 (9th Cir.1987) (state statutes involving capacity to be sued, such as statute governing the capacity of dissolved corporations to be sued,

are not preempted by CERCLA). The parties do not appear to dispute that the Delaware nonclaim statute does not govern the liability of particular defendants, but rather controls their capacity to be sued. *See Estate of Holton,* No. 4682, 1976 WL 5206 (Del.Ch. Aug. 17, 1976). Thus, following Federal Rule of Civil Procedure 17(b), the Court looks to Delaware law to determine whether Witco can assert its claim against Jeanne Beekhuis and Wilmington Trust.

Several courts have criticized *Levin Metals. See, e.g., Stychno v. Ohio Edison Co.,* 806 F.Supp. 663, 668–69 (N.D.Ohio 1992); *Traverse Bay Area Intermediate School District v. Hitco, Inc.,* 762 F.Supp. 1298, 1301 (W.D.Mich.1991); *United States v. Sharon Steel Corp.,* 681 F.Supp. 1492, 1499 (D.Utah 1987). Those courts have noted that the *Levin Metals* holding allows corporations to dissolve in order to avoid liability under CERCLA: "[I]t is not difficult to envision widespread corporate dissolution whenever a new toxic site is identified"; *Stychno,* 806 F.Supp. at 669; "any corporation could escape CERCLA liability simply by dissolving before the government brought suit, perhaps to incorporate again after someone else had paid to clean up its hazardous wastes." *Sharon Steel,* 681 F.Supp. at 1498. While a holding of no preemption in the context of corporate dissolution statutes might create incentives that are contrary to Congress' broad purposes in enacting CERCLA, those incentives are not implicated in the context of state probate law. An individual is unlikely to commit suicide for the purpose of triggering the eight month time period in the Delaware nonclaim statute, thereby shortening the time period within which CERCLA claims can be asserted.

Furthermore, courts rejecting the holding of *Levin Metals* have recognized a distinction between "dead" and "dead and buried" corporations. *See Sharon Steel,* 681 F.Supp. at 1498 ("dead" corporations are dissolving, but have not yet distributed all assets to their shareholders, while "dead and buried" corporations have fully disposed of their assets). Accordingly, while "dead and buried" corporations are not amenable to suit under CERCLA, corporations that are merely "dead" are. *Traverse Bay,* 762 F.Supp. at 1301–02. Estates that have been fully distributed are like "dead and buried" corporations and may not be reached under CERCLA. *See Chesapeake and Potomac Telephone Co. v. Peck Iron & Metal Co., Inc.,* 814 F.Supp. 1285 (E.D.Va.1993). Having distributed $648,618.26 to Dr. Beekhuis' estate to pay its expenses, the trustee set aside the remaining property for the Residuary Trust. Dr. Beekhuis' estate is now closed and there are no assets remaining in the estate. *See* Affidavit of William Poole, D.I. 20 at Exhibit 4.

Second, in the probate context not only is the federal interest in enforcing CERCLA diminished as compared to, for example, the federal interest in enforcing CERCLA in the corporate dissolution context, but also a state's interest in the prompt settlement of its residents' estates is particularly strong. Correspondingly, in the context of Delaware's probate law, the rulings of the *Thomopolous* and *Soo Line* courts are inherently unworkable. Consider the following example, which illustrates the pitfalls of adhering to the logic of *Soo Line* and *Thomopolous:* A decedent dies today and his estate is settled within eight months; twenty years from now the decedent is deemed a potentially responsible party under CERCLA, thus triggering the three year CERCLA limitations period for contribution claims; a plaintiff obtains a judgment against the decedent's estate; in order to collect the judgment, the money in the estate must be traced and retrieved subject to the applicable defenses. The possibility of a CERCLA claim arising long after the settlement of the estate would hang as a dark cloud over any such settlement, thereby compromising the goals of certainty and promptness in the settlement and distribution of decedent's estates.

Additionally, as further evidence that the Delaware nonclaim statute will not frustrate the goals of CERCLA, the Court notes that the statute does not appear to bar CERCLA claims that arise in the future so long as the contingent claim holder preserves its claim against an estate by delivering within eight months of the decedent's death a written statement of the claim to the personal representative of the estate. 12 Del.C. § 2102. If such a claim is rejected by the personal

representative of the estate, the contingent claim holder may petition the Court of Chancery for an extension of the time period for commencing an action against the estate. 12 Del.C. § 2102(c). The Court of Chancery may grant an extension, not to exceed the limitations period for the underlying claim. Thus, if Witco had presented its claim to Dr. Beekhuis' estate within the eight month period provided in Section 2102, it could have petitioned the Court of Chancery for an extension of time to file its contribution claim and the Court of Chancery could have granted the extension for a time period as long as the CERCLA limitations period.

### B. *Application of the Delaware nonclaim statute*

■ Having determined that the Delaware nonclaim statute is not preempted by CERCLA and applies to this case, the Court concludes that the nonclaim statute bars Witco's claim against the moving defendants. As early as October 26, 1988, Witco knew that the EPA had spent approximately $700,000 investigating the site. On October 28, 1988, Witco notified Dr. Beekhuis of the EPA's action. Thus, Witco knew in 1988 that it faced potential CERCLA liability, and that Dr. Beekhuis was a potentially responsible party. When Dr. Beekhuis died on March 21, 1989, Witco had eight months within which to notify Dr. Beekhuis' estate of Witco's contingent CERCLA contribution claim. Witco first notified the estate of Witco's potential claim against the estate on January 18, 1990, nearly ten months after Dr. Beekhuis' death. Witco does not contend that it did not have notice of Dr. Beekhuis' death. Even if Witco had made such an argument, Section 2102 bars claims presented more than eight months after the decedent's death "whether or not ... notice ... has been given." 12 Del.C. § 2102. Accordingly, Witco's claim against Dr. Beekhuis' estate is barred by the Delaware nonclaim statute.

The Court will enter an Order in accordance with this Opinion.