

Opinions of the United
States Court of Appeals
for the Third Circuit

10-20-1994

# Witco v. Beekhuis

Precedential or Non-Precedential:

Docket 93-7837

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1994

Recommended Citation

"Witco v. Beekhuis" (1994). *1994 Decisions*. Paper 161.
http://digitalcommons.law.villanova.edu/thirdcircuit_1994/161

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1994 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT


No. 93-7837


WITCO CORPORATION,

                                    Appellant
                    v.

JEANNE V. BEEKHUIS, Executrix for
the Estate of H. Albert Beekhuis;
    BRANDYWINE CHEMICAL COMPANY;
WILMINGTON TRUST COMPANY, as Trustee for
the Trust Agreement dated August 9, 1985
between H. Albert Beekhuis and Wilmington
  Trust Company; and Jeanne V. Beekhuis,
                individually


Appeal from the United States District Court
        for the District of Delaware
        (D.C. Civ. No. 92-cv-00301)


Argued August 10, 1994
Before:  MANSMANN, COWEN and McKEE,
        <u>Circuit</u> <u>Judges</u>

(Filed October 21, 1994)


Judith N. Renzulli (Argued)
Kevin W. Goldstein
Duane, Morris & Heckscher
1201 Market Street, Suite 1500
P.O. Box 195
Wilmington, DE  19899

        COUNSEL FOR WITCO CORPORATION
                Appellant

James F. Burnett (Argued)
Potter, Anderson & Corroon
350 Delaware Trust Building
P.O. Box 951
Wilmington, DE  19899

        COUNSEL FOR JEANNE V. BEEKHUIS,
        Executrix for the Estate of
        H. Albert Beekhuis
                Appellee

Thomas R. Hunt, Jr.
R. Judson Scaggs, Jr. (Argued)
Morris, Nichols, Arsht & Tunnell
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899

        COUNSEL FOR WILMINGTON TRUST COMPANY,
        AS Trustee for the Trust Agreement
        dated August 9, 1985 between
        H. Albert Beekhuis and Wilmington
        Trust Company
                Appellee

**OPINION**


COWEN, <u>Circuit</u> <u>Judge</u>.


In this action for contribution under the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. §§ 9601, <u>et seq.,</u> ("CERCLA"), Witco Corporation ("Witco") asserts its claim against: Jeanne V. Beekhuis (daughter of Dr. H. Albert Beekhuis and executrix for his estate); Wilmington Trust Company ("WTC") (trustee of two trusts created by Dr. Beekhuis); and Brandywine Chemical Company ("Brandywine Chemical") (collectively, "the defendants").

Witco's claim relates to a parcel of land ("the site") previously owned by Halby Products and Halby Chemical Company (collectively, "Halby"). Dr. Beekhuis was an officer, director and majority stockholder of Halby. The site became Witco's property in 1972 when Halby merged into Witco's subsidiary. In 1977, the site was sold to Brandywine Chemical. Thereafter, because the site was contaminated with various chemicals, the U.S. Environmental Protection Agency ("EPA") placed the site on the CERCLA National Priorities List.

In 1992, Witco entered into a Consent Decree with the EPA to provide for the cleanup of the site. Witco now seeks contribution from the defendants for the costs associated with cleaning the site. Witco's claim against Jeanne Beekhuis is in her representative capacity as executrix of the estate of Dr. Beekhuis, and its claim against WTC is in its capacity of trustee, charged with the responsibility of paying the debts of the estate of Dr. Beekhuis.

The district court entered two orders which are at issue in this appeal. In the first order dated May 20, 1993, the court held that the CERCLA statute of limitations for contribution did not preempt Delaware probate law. In a second order dated November 24, 1993, the district court held that the Estate was entitled to statutory indemnification from Witco. Although these two orders did not terminate the litigation, the district court by order entered on November 29, 1993, directed that judgment be entered on both orders. See Fed. R. Civ. P. 54(b).

This appeal raises one issue of first impression at the federal appellate level, and one issue of first impression in the Court of Appeals for the Third Circuit. The former is whether the three-year statute of limitations established by Congress for contribution claims under CERCLA preempts state nonclaim statutes that govern the administration of decedents' estates. The latter issue is whether under CERCLA an estate of a "potentially responsible party" can properly establish an indemnity claim pursuant to Delaware General Corporation Law. We hold that CERCLA does not preempt state nonclaim statutes, and will affirm the order of the district court granting summary judgment to the defendants. We also hold that statutory indemnification pursuant to Delaware General Corporation Law is not affected by CERCLA, and also will affirm the order of the district court granting summary judgment on the issue of indemnification.

I.

Dr. H. Albert Beekhuis was an officer, director and majority shareholder of Halby Products and Halby Chemical Company, both of which were Delaware corporations. Halby operated a chemical manufacturing and distribution business on land it owned. In 1972, Halby was merged into a Witco subsidiary, Argus Chemical Company ("Argus"), which subsequently was merged into Witco. Witco is a Delaware corporation. Argus continued to use the site in its chemical business until it sold the site to Brandywine Chemical in 1977. From that time until

the present, Brandywine Chemical has used the site as a storage and repackaging facility for chemicals.

In August, 1985, Dr. Beekhuis entered into a trust agreement creating two separate inter vivos trusts, with WTC as the trustee for each trust. The first trust, into which Dr. Beekhuis placed substantially all of his assets, was to provide for income and maintenance for Dr. Beekhuis and his dependents during his lifetime. It was also to provide his estate upon his death with funds to pay debts and other expenses associated with settling his estate. The second trust was a residuary trust which was funded by property remaining after the first trust had been closed subsequent to the administration of his estate. Jeanne Beekhuis, the daughter of Dr. Beekhuis, is the primary life beneficiary of the residuary trust. Upon her death, the trust assets will be distributed to various charities.

Witco has been aware of potential environmental problems on the site since at least June of 1985, when the EPA requested information from the company in connection with its investigation of the site. In April of 1986, Witco received a Special Notice Letter from the EPA inviting it to perform a Remedial Investigation/Feasibility Study (RI/FS) Report for the site. The EPA subsequently placed the site on the CERCLA National Priorities List because it had detected various hazardous chemicals, such as lead, mercury, cyanide and arsenic, in the soil at the site. In October of 1988, because of a release or a substantial threat of a release of hazardous substances at the site, the EPA commenced the RI/FS.

On October 28, 1988, Witco notified Dr. Beekhuis of his potential liability under CERCLA. Witco also requested certain insurance information from Dr. Beekhuis and informed him that the EPA had already spent approximately $700,000 investigating the site. On January 21, 1989, Dr. Beekhuis responded through his attorney by providing the requested insurance information.

On March 21, 1989, Dr. Beekhuis died. Jeanne Beekhuis, Dr. Beekhuis' daughter, was appointed executrix of the estate. Eight months later, after paying the debts of the estate and after the Delaware statute of limitations for claims against the estate had run, the trustee of the first trust placed all of the property remaining in the first trust into the Residuary Trust. Between the date of Dr. Beekhuis' death and November 21, 1989, Witco took no action with respect to any possible CERCLA contribution claim against the estate of Dr. Beekhuis.

On January 18, 1990, Witco wrote to the lawyer for Dr. Beekhuis' estate, apprising him of Witco's potential claim for contribution, and seeking the imposition of a constructive trust on the estate's assets pending resolution of the environmental problem at the site. The attorney advised Witco that it was premature to request the imposition of a constructive trust as no claim had yet been asserted by the EPA against Witco.

On December 4, 1990, Witco filed in Delaware state court a petition for a constructive trust on the assets in Dr. Beekhuis' estate. The court dismissed the action for failure to state a claim. In re: Estate of H. Albert Beekhuis, No. 11,853, 1992 WL 5689 (Del. Ch. Jan. 13, 1992).

On June 28, 1991, the EPA published its Final Record of Decision ("ROD") recommending remedial action for the site. The ROD recommended excavation, stabilization, backfill, and capping of contaminated surface soil at the site. In August of 1991, the EPA notified Witco, Argus, Brandywine Chemical, and the estate of Dr. Beekhuis that each was a potentially responsible party ("PRP") for the discharge of hazardous waste at the site. Each party named as a PRP was given the opportunity to participate in the planned remedial process for the site. Witco subsequently executed a Consent Decree with the EPA for the remediation of the contaminated soil. United States v. Witco Corp., Consent Decree, C.A. 92-93 (D. Del. April 9, 1992). Pursuant to the Consent Decree and the ROD, Witco has incurred remedial response costs and expenses for the site.

After executing a consent decree with the EPA for remediation of the site, Witco filed its claim and thereafter its amended claim for contribution against Jeanne Beekhuis, as executrix of the estate; WTC, as trustee; and Brandywine Chemical. The Executrix filed an answer and an amended answer to the amended complaint asserting a counterclaim against Witco for indemnification for all expenses, including attorney's fees incurred in connection with this action, the civil action in the Delaware state court, and any threatened, pending or completed EPA actions, suits, or proceedings.

The district court granted the motions of the Executrix and WTC for summary judgment on the CERCLA contribution claims. Witco Corp. v. Beekhuis, 822 F.Supp. 1084 (D. Del. 1993). In a

subsequent opinion, the district court granted the Executrix's motion for summary judgment on the counterclaim against Witco for indemnification. Witco Corp. v. Beekhuis, Mem. Op., C.A. No. 92-301-RRM (D. Del., Oct. 22, 1993).

II.

A.

The district court exercised its jurisdiction pursuant to 28 U.S.C. §§ 1331, 2201, and 2202, and under 42 U.S.C. § 9613(b). We have appellate jurisdiction under 28 U.S.C. § 1291 and Fed. R. Civ. P. 54(b), in that this is an appeal from a final judgment as to some but not all parties and issues involved in the district court proceedings. On November 24, 1993, the district court entered final judgment on these two orders which are before us for review pursuant to Fed. R. Civ. P. 54(b).

B.

Federal Rule of Civil Procedure 56(c) provides that a party is entitled to summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986). A

party seeking summary judgment always bears the initial responsibility of informing the Court of the basis for its motion, and identifying those portions of the "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Id. at 323, 106 S. Ct. at 2553. Where, as here, the non-moving party has the burden of proof at trial on the issue for which summary judgment is sought, that party must make a showing sufficient to establish the existence of a genuine issue for trial. Id. at 324, 106 S. Ct. at 2553. Moreover, the mere existence of some evidence in support of the non-moving party will not be sufficient to support a denial of a motion for summary judgment; there must be enough evidence to enable a jury to reasonably find for the non-moving party on the issue. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S. Ct. 2505, 2511 (1986).

## III.

In support of their motions for summary judgment, defendants contend that the Delaware nonclaim statute, Title 12, § 2102, applies in this case, and is a complete bar to the claim for contribution. Section 2102(a) provides, in pertinent part:

> All claims against a decedent's estate which arose before the death of the decedent . . . whether due or to become due, absolute or contingent, liquidated or unliquidated, founded on contract, tort or other legal

> basis . . . are barred against the estate,
> the personal representative and the heirs and
> devisees of the decedent unless presented as
> provided in § 2104 of this title <u>within 8
> months of the decedent's death</u> whether or not
> the notice referred to in § 2101 of this
> title has been given.

Del. Code Ann. tit. 12, § 2102(a) (1992) (emphasis added).

Defendants argue that because Witco failed to present its contingent CERCLA contribution claim to the executrix of Dr. Beekhuis' estate by November 21, 1989, eight months after Dr. Beekhuis' death, the claim is now forever barred under the Delaware nonclaim statute.

Witco contends, however, that the CERCLA limitations period for contribution claims of three years from the date of judgment or a judicially approved settlement applies to this case. 42 U.S.C. § 9613(g)(3) provides, in pertinent part:

> (3) **Contribution**
> No action for contribution for any response
> costs or damages may be commenced more than 3
> years after --
>> (A)  the date of judgment in any
>> action under this chapter for
>> recovery of such costs or damages,
>> or
>> (B)  the date of . . . entry of a
>> judicially approved settlement with
>> respect to such costs or damages.

42 U.S.C. § 9613(g)(3) (1988).

Accordingly, Witco argues that it had three years from April 29, 1992, the date of the Consent Decree, to file its CERCLA contribution claim. Since Witco filed its claim on May 25, 1992, it contends that it is within the CERCLA limitations period. Witco further asserts that to the extent the two

statutes conflict, the CERCLA statute of limitations preempts the Delaware nonclaim statute.

The United States Supreme Court in <u>California Federal Sav. and Loan Ass'n v. Guerra</u>, 479 U.S. 272, 107 S. Ct. 683 (1987) has provided a cogent analysis of when a state law may be preempted by federal law. The Court wrote in that case:

> In determining whether a state statute is pre-empted by federal law and therefore invalid under the Supremacy Clause of the Constitution, our sole task is to ascertain the intent of Congress. Federal law may supersede state law in several different ways. First, when acting within constitutional limits, Congress is empowered to pre-empt state law by so stating in express terms. Second, congressional intent to pre-empt state law in a particular area may be inferred where the scheme of federal regulation is sufficiently comprehensive to make reasonable the inference that Congress "left no room" for supplementary state regulation . . . .
>
> As a third alternative, in those areas where Congress has not completely displaced state regulation, federal law may nonetheless pre-empt state law to the extent it actually conflicts with federal law. Such a conflict occurs <u>either because "compliance with both federal and state regulations is a physical impossibility," or because the state law stands "as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."</u>

<u>Id.</u> at 280-281, 107 S. Ct. at 689 (citations omitted) (emphasis added).

This Court has held that in enacting CERCLA Congress has not explicitly preempted all state law on environmental subject matter, nor has Congress enacted such a comprehensive

scheme of regulation as to provide no room for supplementation by the states.  Manor Care, Inc. v. Yaskin, 950 F.2d 122, 125-26 (3d Cir. 1991) (citing Exxon v. Hunt, 475 U.S. 355, 106 S. Ct. 1103 (1986)).  Thus, it is clear that neither the first nor the second basis for preemption of state law under Guerra are present in this case.

Turning to the third basis for preemption of state law, we must ask two questions in determining whether a state law conflicts with federal law: (1) is it possible to comply with both laws, and, (2) does the state law stand as an obstacle to the intent of Congress?  Guerra, 479 U.S. at 281, 107 S. Ct. at 689.

Before examining these two questions, it is important to note that federal preemption of state law is not favored.  This is particularly true in areas of law traditionally dominated by the individual states.  See English v. General Electric Company, 496 U.S. 72, 79, 110 S. Ct. 2270, 2275 (1990) ("`[w]here . . . the field which Congress is said to have pre-empted' includes areas that have `been traditionally occupied by the States,' congressional intent to supersede state laws must be `"clear and manifest."'" (citing Jones v. Roth Packing Co., 430 U.S. 519, 525, 97 S. Ct. 1305, 1309 (1977), quoting Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 230, 67 S. Ct. 1146, 1152 (1947)).  In an area that has been traditionally occupied by the states, the court must assume that the prerogatives of the states was not to be superseded by a federal law unless it is the clear and manifest purpose of Congress.  See Hillsborough County v.

Automated Medical Laboratories, Inc., 471 U.S. 707, 715-16, 105 S. Ct. 2371, 2376 (1985); Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 230, 67 S. Ct. 1146, 1152 (1947). Indeed, for preemption to occur in a field traditionally occupied by the states, there must be a "sharp" conflict between state law and federal policy. See Boyle v. United Technologies Corp., 487 U.S. 500, 507, 108 S. Ct. 2510, 2516 (1988). Since probate matters traditionally have been nearly the exclusive concern of the states, there is a presumption against preemption of state law.

### A. Is it possible to comply with both statutes?

The district court correctly observed that in this case, it was possible for Witco to comply with both the federal and state statutes. The provision in the Delaware nonclaim statute, Title 12, § 2102, fixing an eight-month period for filing a claim against an estate and the three-year period for making a claim for contribution under CERCLA, are not mutually exclusive. One can notify an estate of a contingent claim within eight months of a decedent's death, and also file a contribution action within three years of the date of a judgment for response costs. The Delaware nonclaim statute expressly provides for a mechanism that can be used to preserve contingent contribution claims under CERCLA. If a contingent claim is asserted but is rejected by an executor, the claimant may petition the Delaware Chancery Court for an extension of the time within which to file that claim. Del. Code Ann. tit. 12, § 2102(c) (1987).

Witco knew in 1988 that it faced potential CERCLA liability, and Witco believed that Dr. Beekhuis also was a potentially responsible party. When Dr. Beekhuis died on March 21, 1989, Witco had eight months within which to notify the Executrix of Witco's contingent CERCLA contribution claim. If the Executrix rejected the claim or refused to consent to an extension of the time to file the claim, Witco could have petitioned the Court of Chancery to extend the time for pursuing the claim. Witco could have preserved its right to seek contribution at a later date and thus comply with both statutes.

We recognize that there will be instances where a PRP seeking contribution will find it impossible to comply with both a state nonclaim statute and the CERCLA statute of limitations. For instance, a PRP may not become aware of his or her own CERCLA liability until well after a state nonclaim statute has run. Nevertheless, for the reasons that we discuss below, we conclude that preemption is not appropriate. In the context of remediating the environment, we believe that the issue of whether a nonclaim statute stands as an obstacle to congressional intent is the more important inquiry. Thus, while under certain circumstances a nonclaim statute and the CERCLA statute of limitations can be at odds, we do not foresee a substantial impediment to the aims and objectives of CERCLA by our holding today.

B. Does the Delaware nonclaim statute stand as an obstacle to congressional intent?

The purpose and objective of CERCLA is to provide the federal government with broad powers to effectively respond to existing and future problems associated with the disposal or creation of hazardous wastes, and to ensure "that those responsible for problems caused by the disposal of chemical poisons bear the cost and responsibility for remedying the harmful conditions they created."  United States v. Reilly Tar & Chemical Corp., 546 F.Supp. 1100, 1112 (D. Minn. 1982).

Three district courts have held that in the probate context, state nonclaim statutes stand as an obstacle to Congress' intent in enacting CERCLA.  In Freudenberg-NOK General Partnership v. Thomopoulos, 1991 WL 325290, 1991 U.S. Dist. LEXIS 19421 (D.N.H. Dec. 9, 1991), the court without significant discussion found CERCLA and the nonclaim statute in conflict.  Id. 1991 WL 325290 at *2, at *4.  After examining the legislative history of CERCLA, the Thomopoulos court noted that Congress intended CERCLA to be given a broad and liberal interpretation.  Thus, the court held that there was "little doubt as to Congress' intent to preempt conflicting state statutes in responding to the kinds of environmental hazards posed by" the site in question.  Id. 1991 WL 325290 at *4.  The courts in Soo Line R.R. Co. v. B.J. Carney & Co., 797 F.Supp. 1472 (D. Minn. 1992) and Steego Corp. v. Ravenal, 830 F.Supp. 42 (D. Mass. 1993) relied primarily on the Thomopoulos decision in their holdings that CERCLA preempted the respective state nonclaim statutes.

We decline to adopt the holdings of Thomopoulos, Soo Line, and Steego, but rather, we will affirm the holding of the district court in this matter that Congress could not have implicitly intended to preempt the Delaware nonclaim statute. First, and most significantly, a state's interest in the prompt settlement of its citizens' estates is particularly strong. Probate law, like real estate law and domestic relations law, has traditionally been within the province of the individual states. Long-standing precedent recognizes that federal claims against decedents' estates are subject to state probate laws and procedures, unless federal law specifically provides otherwise. See, e.g., Pufahl v. Estate of Parks, 299 U.S. 217, 225, 57 S. Ct. 151, 156 (1936); Forrest v. Jack, 294 U.S. 158, 162-63, 55 S. Ct. 370, 372 (1935).

Nothing in the language of CERCLA suggests that Congress intended to preempt state law governing claims against decedents' estates. Section 9613(f) of CERCLA authorizes contribution actions against "any . . . person who is liable or potentially liable under Section 9607(a) . . . ." 42 U.S.C. § 9613(f) (1988). Section 9607(a) in turn, delineates four classes of responsible parties upon whom liability is imposed: (1) the current owners or operators of a contaminated property, (2) owners or operators of the property at the time of hazardous waste disposal, (3) persons who arrange for disposal or treatment of hazardous substances at the property, and (4) persons who accepted hazardous substances for transport to the property. 42 U.S.C. § 9607(a) (1988). CERCLA does not contain any provision

that imposes liability directly upon the estates of those four classes of responsible parties.  In light of the traditional reluctance of Congress to preempt state laws which are of significant importance to the states and traditionally within their province, we decline to read into the CERCLA statute the congressional intent to except CERCLA claims from state probate laws and procedures.

Second, by analogy, we can infer strong congressional intent not to modify state probate law.  Congress expressly endorsed traditional rules of property descent by creating an exception to the CERCLA liability scheme called the "innocent landowner defense" under Section 9607(b)(3).  Under traditional probate law, after a decedent's personal representative pays the decedent's debts and distributes any remaining property to beneficiaries, creditors who fail to file timely claims lose their right to collect from the estate, and property distributed is not subject to creditors' claims.  Under the "innocent landowner defense," a person who inherits contaminated property thereby becoming an owner and a potentially responsible party under CERCLA, is entitled to assert the innocent landowner defense and escapes liability.  Congress created this exception to CERCLA liability in order not to disturb state law controlling the descent and distribution of property.  It would be illogical for us to conclude that Congress impliedly preempted state probate law to expand a CERCLA claimant's right to seek contribution against property of a deceased potentially responsible party, when Congress expressly narrowed CERCLA

liability with regard to the contaminated facility itself (in order not to disturb the normal descent and distribution of real property under state probate law).

Third, we agree with the analysis of the district court that Congress did not intend to modify state law governing capacity of a party to be sued.  Witco Corp., 822 F.Supp. at 1089-90.  Section 9613(f) provides:

> (1) **Contribution**
> Any person may seek contribution from any other person who is liable or potentially liable under section 9607(a) of this title, during or following any civil action under section 9606 of this title or under section 9607(a) of this title.  Such claims shall be brought in accordance with this section and the Federal Rules of Civil Procedure, and shall be governed by Federal law.

42 U.S.C. § 9613(f) (1988) (emphasis added).

Congress clearly mandated that courts follow the Federal Rules of Civil Procedure when adjudicating CERCLA claims. Rule 17(b) of the Federal Rules of Civil Procedure provides in pertinent part: "The capacity of an individual, other than one acting in a representative capacity, to sue or be sued shall be determined by the law of the individual's domicile."  Fed. R. Civ. P. 17(b).  As a result, state capacity statutes, as opposed to liability statutes, are not preempted under CERCLA.  See Levin Metals Corp. v. Parr-Richmond Terminal Co., 817 F.2d 1448, 1451 (9th Cir. 1987) (state statutes involving capacity to be sued, such as statute governing the capacity of dissolved corporations

to be sued, are not preempted by CERCLA); United States v. Northeastern Pharmaceutical & Chemical Co., 810 F.2d 726, 746 (8th Cir. 1986) (in a CERCLA action, "[t]he capacity of a corporation to sue or be sued is determined by the law under which it is organized"), cert. denied, 484 U.S. 848, 108 S. Ct. 146 (1987); City of Philadelphia v. Stepan Chem. Co., 713 F.Supp. 1491 (E.D. Pa. 1989) (city could not pursue CERCLA claim against distributees of assets of corporation dissolved in accordance with state law). Thus, following Rule 17(b), we must look to Delaware law to determine whether Witco, at this late date after the statute of limitations under state law has run, can assert its claim against the Executrix.

Title 12, § 2102 of the Delaware Code is not merely a general statute of limitations, but instead is characterized as a "nonclaim" statute. The purpose of the nonclaim statute is not the same as a general statute of limitations which merely seeks to avoid stale claims. Rather, "prompt distribution of the assets of the estate is the ultimate goal of the statute." Estate of Holton, No. 4682, 1976 WL 5206, at *2 (Del. Ch. Aug. 17, 1976). The Delaware nonclaim statute terminates an estate's capacity to be sued eight months after the death of a decedent unless the claim or potential claim is submitted prior thereto. The Delaware nonclaim statute makes it impossible under state law for a tardy claimant to obtain jurisdiction over a closed estate. Accordingly, the executrix of the estate of Dr. Beekhuis is not amenable to suit for late claims, including those arising under CERCLA.

Last, we conclude that for pragmatic reasons, Congress could not have intended for CERCLA to preempt state nonclaim statutes.  Preemption would be inherently unworkable.  The district court aptly described the problem:

> Consider the following example, which illustrates the pitfalls of adhering to the logic of Soo Line and Thomopoulos:  A decedent dies today and his estate is settled within eight months;  twenty years from now the decedent is deemed a potentially responsible party under CERCLA, thus triggering the three year CERCLA limitations period for contribution claims;  a plaintiff obtains a judgment against the decedent's estate;  in order to collect the judgment, the money in the estate must be traced and retrieved subject to the applicable defenses.  The possibility of a CERCLA claim arising long after the settlement of the estate would hang as a dark cloud over any such settlement, thereby compromising the goals of certainty and promptness in the settlement and distribution of decedent's estates.

Witco Corp., 822 F.Supp. at 1090.

We do not believe that Congress intended to unsettle estates and create the potential havoc which the district court described.  It is merely fortuitous in this case that assets of the estate of Dr. Beekhuis are easily traceable and retrievable.  We must consider the effect of our holding on future estates, which may not be as financially intact as that of Dr. Beekhuis.  It is untenable that Congress intended to reach so deep into the domain of state probate administration and use the heavy hand of CERCLA to disturb and upset long-settled estates.  The position urged by Witco would result in no statute of limitations being applicable to CERCLA claims against long-closed and settled

decedents' estates -- except three years from the date of judgment or entry of a judicially approved settlement under CERCLA. Such a rule would create pandemonium in the descent and distribution of decedents' estates. We decline to imply such an intent on the part of Congress merely based upon a three year statute of limitations for contribution claims under CERCLA.

IV.

The Estate requests that Witco indemnify it for all expenses, including attorney's fees, it actually and reasonably incurred in connection with (i) the defense of Witco's claims in this action, (ii) the defense in In re: Estate of H. Albert Beekhuis, No. 11,853, in the Delaware state court, and (iii) the response to the investigative and administrative activities of the EPA with respect to the site. The district court correctly recognized the strong and clear mandate of the Delaware General Corporation Law ("DGCL") in its order requiring Witco to indemnify the Executrix for all of the expenses requested.

Witco is the surviving corporation in a series of mergers that began when Halby was merged into a Witco subsidiary in 1972. The present suit is in effect a suit by a Delaware corporation against one of its former officers and directors. Witco has assumed all the liabilities of Halby through this succession of mergers. Del. Code Ann. tit. 8, § 259(a) (1991). Thus, for purposes of indemnification, the rights of the Estate

must be measured as though Dr. Beekhuis had been an officer and director of Witco.[1]

Section 145(c) of DGCL requires a corporation to indemnify any director, officer, employee or agent of the corporation "[t]o the extent that" he was successful "on the merits or otherwise," in defense of any threatened, pending, or completed action, suit or proceeding in which he was a party by reason of the fact that he is or was a director, officer, employee or agent of the corporation. Del. Code Ann. tit. 8, § 145(c) (1991).[2] Section 145(c) is a mandatory provision that

---

1 Section 145(h) of the DGCL provides in pertinent part:

For purposes of this section, references to "the corporation" shall include, in addition to the resulting corporation, any constituent corporation (including any constituent of a constituent) absorbed in a consolidation or merger which, if its separate existence had continued, would have had power and authority to indemnify its directors, officers, and employees or agents, so that any person who is or was a director, officer, employee or agent of such constituent corporation . . . shall stand in the same position under this section to the resulting or surviving corporation as he would have with respect to such constituent corporation if its separate existence had continued.

Del. Code Ann. tit. 8, § 145(h)(1991).

2 Section 145(c) provides:

To the extent that a director, officer, employee or agent of a corporation has been successful on the merits or otherwise in defense of any action, suit or proceeding referred to in subsections (a) and (b) of this section, or in defense of any claim, issue or matter therein, he shall be indemnified against

applies to all Delaware corporations and grants an absolute right of indemnification in such situations.  See Green v. Westcap Corp. of Delaware, 492 A.2d 260, 265 (Del. Super. 1985).

The indemnification rights provided by Section 145 "continue as to a person who has ceased to be a director, officer, employee, or agent and . . . inure to the benefit of the heirs, executors and administrators of such a person."  Del. Code Ann. tit. 8, § 145(j) (1991).

The long-standing policy for the indemnification provisions in the DGCL has been described as follows:

> The invariant policy of Delaware legislation on indemnification is to "promote the desirable end that corporate officials will resist what they consider" unjustified suits and claims, "secure in the knowledge that their reasonable expenses will be borne by the corporation they have served if they are vindicated."  Beyond that, its larger purpose is "to encourage capable men to serve as corporate directors, secure in the knowledge that expenses incurred by them in upholding their honesty and integrity as directors will be borne by the corporation they serve."

Merritt-Chapman & Scott Corp. v. Wolfson, 321 A.2d 138, 141 (Del. Super. 1974) ("Merritt-Chapman") (quoting Folk, The Delaware General Corporation Law, 98 (1972)) (citations omitted).  Courts

---

> expenses (including attorneys' fees) actually or reasonably incurred by him in connection therewith.

Del. Code Ann. tit. 8, § 145(c)(1991).  Subsections (a) and (b) refer to threatened, pending or completed actions, suits and proceedings where a person is a party "by reason of the fact that he is or was a director, officer, employee or agent of the corporation . . . ."  Del. Code Ann. tit. 8, § 145(a),(b)(1991).

have interpreted these indemnification rights very broadly. E.g., Heffernan v. Pacific Dunlop GNB Corp., 965 F.2d 369, 375 (7th Cir. 1992) ("Both the language and the purpose of Delaware's indemnification statute support interpreting its scope expansively.")

Witco argues that the district court erred in granting summary judgment on the Estate's indemnity counterclaim because there are material facts in dispute concerning the alleged basis for Dr. Beekhuis' liability. Witco contends that Dr. Beekhuis incurred CERCLA liability by his own personal conduct, and was not insulated from that liability by having set up a corporate entity and designating himself an officer and director. The theory of Witco's complaint is that Dr. Beekhuis is liable for his personal acts and thus, his particular title or role within any corporation is irrelevant to his CERCLA liability.

We are satisfied that under federal law, Dr. Beekhuis, as a director and officer, may be found personally liable as an "operator" within the meaning of CERCLA. See Sidney S. Arst Co. v. Pipefitters Welfare Educational Fund, No. 93-1227, 1994 WL 198003 at *2 (7th Cir., May 20, 1994) (corporate officers and directors may be held personally liable as "operators" within the meaning of CERCLA and that this direct, personal liability is distinct from derivative liability for corporate violations); Riverside Mkt. Dev. Corp. v. International Bldg. Prods., Inc., 931 F.2d 327, 330 (5th Cir. 1991) ("CERCLA prevents individuals from hiding behind the corporate shield when, as `operators,' they themselves actually participate in the wrongful conduct

prohibited by the Act."); United States v. Kayser-Roth Corp., 910 F.2d 24, 26-27 (1st Cir. 1990) (noting cases in which parent corporations and shareholders were held liable as "operators" under CERCLA); United States v. Northeastern Pharmaceutical & Chemical Co., 810 F.2d at 743-44 (Congress intended CERCLA liability to attach to corporate officers). Witco alleges that Dr. Beekhuis personally designed many of the chemical manufacturing and disposal processes used at the site and directed construction and maintenance of a lagoon and drainage ditch at the site into which chemical waste was regularly disposed. We acknowledge that these allegations may form the basis of Dr. Beekhuis' personal "operator" liability under CERCLA.

Nonetheless, the Delaware courts and legislature under state law have chosen to provide broad statutory indemnification protection in situations where a corporate officer or director successfully defends against claims of personal liability that arise from or have a nexus to his corporate position. In Merritt-Chapman, the claimant sought indemnification from Merritt-Chapman for expenses incurred in successfully defending against criminal charges of perjury and conspiracy to violate federal securities law. Merritt-Chapman, 321 A.2d at 140. These charges arose as a result of the claimant's position as a director and officer of Merritt-Chapman. However, the criminal charges were not derivative; they were based on the plaintiff's alleged personal participation in the conspiracy and on his subsequent alleged perjured testimony. The court nevertheless

found that the plaintiff was entitled to indemnification pursuant to Section 145(c) to the extent that he had been successful in defending against the criminal charges in question.  Id. at 141-44.

Similarly, in Green, the plaintiff sought indemnification pursuant to Section 145(c) for the expenses that he incurred in successfully defending against criminal charges that arose as a result of his position as vice president of the corporation.  Green, 492 A.2d at 262.  The criminal charges focused on the plaintiff's personal actions and involvement in obtaining a loan for the corporation which the corporation used to finance a buy-out.  Id.  Yet, the court did not find that the plaintiff was precluded from indemnification because the charges were based on his alleged personal as opposed to derivative liability.  See also Heffernan v. Pacific Dunlop GNB Corp., 965 F.2d 369, 372 (7th Cir. 1992) (Delaware law did not preclude indemnification of former corporate director for legal expenses incurred in suit alleging failure to disclose environmental liabilities in stock purchase agreement since director may have been sued in official capacity as well as individually in connection with sale of stock); cf. United States v. Lowe, No. 93-2634, 1994 WL 424243 at *4, (5th Cir., Aug. 15, 1994) ("[plaintiff's] CERCLA personal liability does not, without more, void the indemnity clause [of the corporation's bylaws] . . . . Indeed, if [the] officers or directors were not subject to personal liability for acts or omissions arising out of their

corporate positions, there would be little reason for the indemnity clause.").

In the instant case, there can be no doubt that there is a close nexus between the lawsuits filed by Witco and Dr. Beekhuis' former status as an officer and director of Halby. A remand is not necessary since it is evident that Witco's claims against Dr. Beekhuis arise by virtue of Dr. Beekhuis' activities as a director and officer of Halby. Witco made no allegations of self-dealing, criminal acts, or actions undertaken by Dr. Beekhuis which were not performed directly on behalf of Halby. Moreover, Witco has not alleged that Dr. Beekhuis neglected corporate formalities such that we should "pierce the corporate veil" and disregard the corporate entity. We are satisfied that indemnification is available in this matter as a matter of law under Section 145 when the corporate agent has successfully defended the action against him. The order of the district court granting summary judgment to the Estate on its claim seeking indemnification will be affirmed.

## V. **CONCLUSION**

For the foregoing reasons, the order dated May 20, 1993, granting the motions of the Executrix and WTC for summary judgment on the CERCLA contribution claims, and the order dated November 24, 1993, granting the motion of the Executrix on the counterclaim against Witco for indemnification (both of which

were made a final judgment by order entered November 29, 1993) will be affirmed.